CARL H. LAMBACH et al., Appellees, v. D. M. ANDERSON et al., Appellants; T. J. WALSH et al., Trustees, Appellees.

No. 45252.

August 6, 1940.

Rehearing Denied November 22, 1940.

Carl H. Lambach, for appellees.

H. L. Irwin and Hughes, O'Brien & Hughes, for appellants.

Lane & Waterman, for defendants-appellees.

Miller, J.—Plaintiffs' petition asserts that the defendants, other than Buenga, are trustees under the Third and Brady Streets Liquidation Trust, which was executed by said five defendants and Edwin Lisle, now deceased; at the time of such execution, it was contemplated that there would be seven trustees, but Henry Wildesin declined to become a party thereto;

Lisle died and a vacancy was created; the declaration of trust provided that a vacancy might be filled by the remaining trustees, that there should be at all times not less than five nor more than seven trustees, and if, within 60 days after a vacancy occurred, no successor should be appointed, a majority of the holders of beneficiary units may appoint such successor; on May 27, 1937, the five trustees determined to select two trustees; the two vacancies had existed for more than 60 days and the holders of certificates had the right of appointment; they appointed plaintiffs but defendants refuse to recognize such appointments, claiming that only one vacancy exists and that it has been filled by the appointment of Buenga. Plaintiffs prayed that the court confirm their title as co-trustees.

The answer of defendants Anderson, Burrmann, and Capper asserted that Buenga was properly elected successor trustee by them and challenged the purported appointment of plaintiffs on various grounds. The answer of defendants Walsh and Wurzer disclaimed any interest adverse to plaintiffs.

The facts presented by the record herein are substantially without dispute. The determination of the controversy depends primarily upon the interpretation to be given the declaration of the trust. This instrument is 29 pages in length. We will undertake to briefly set out the substance of its provisions.

The instrument was entered into between the defendants Anderson, Burrmann, Capper, Walsh, and Wurzer, together with Edwin Lisle, deceased, (who, with their successors or survivors, were called trustees), and such owners of first mortgage bonds of Third and Brady Streets Corporation, dated February 1, 1931, issued under a trust indenture of that date, as shall become parties as provided by the instrument (who were called certificate holders). The instrument recited that the trustees acquired the sheriff's certificate of sale to the real estate covered by the trust indenture (which is known as the trust property), and it was the intent that they hold it for the purpose of sale, liquidation and distribution to the holders of such bonds as would accept certificates of interest thereunder.

The consenting certificate holders and the trustees agree as follows: The certificate holders are beneficiaries only and not liable as partners; the trustees have full power to manage, operate, improve, maintain, sell and distribute the trust property but may not sell or dispose of the whole or bulk of the property unless 30 days notice be given certificate holders, and such sale shall not be made if 35 percent or more of the holders of units outstanding object; all rights, powers, privileges and obligations of the trustees may be exercised as in their discretion they deem advisable; the trustees may borrow money and encumber the property as security therefor, may issue certificates of indebtedness payable out of net income, shall not be personally liable on such certificates; the beneficial interest is divided into not more than 9,552 units, evidenced by certificates of interest at the rate of $100 per unit; to pay obligations of the trust, the trustees may levy assessments on the units, but not on the holders thereof; the trustees may set apart such reserve as they deem necessary and distribute the net income; if the net income for any 12 months period is less than $4.00 per unit, all of it may be distributed, but if more than that, then $4.00 per unit shall be distributed; the trustees may purchase units after notice that they are prepared to receive tenders and may delegate their powers to those acting for them.

Article X contains the following provisions:

"All the powers and duties of the Trustees, except as herein otherwise expressly provided, may be exercised by a majority of those entitled to vote thereon, with the same effect as if all had joined therein. The Trustees are not required to meet for the purpose of exercising their powers and duties hereunder. The respective Trustees from time to time may be Certificate Holders in this trust, and may at all times, in their individual capacities, deal with said Trustees as fully and freely as if they were not such Trustees."

Article XI provides:

"In case of the resignation, disability, death, removal or inability to act of one or more of said Trustees, then the remaining Trustees or Trustee shall have full power to appoint a successor or successors; provided, however, that there shall be at all times not more than seven (7), nor less than five (5) acting Trustees; provided, further, that if within sixty (60) days after the resignation, disability, death, removal or inability to act of any of said Trustees, no successor or successors thereto shall be appointed, then, in such event, the holders of certificates of interest representing a majortiy of outstanding units by a writing or writings may appoint such successor or successors; and provided, further, that until any such successor is appointed, the remaining Trustee or Trustees shall have all the powers herein granted to all the Trustees. * * *

"The Trustees may hold meetings at such places and at such times as they may determine. A majority of the whole number of Trustees then acting shall constitute a quorum. * * * The powers of the Trustees hereunder shall, except as herein otherwise provided, be exercised by a majority vote of the Trustees. It shall, however, not be necessary for the Trustees to formally assemble for the purpose of conducting the affairs of this Trust or exercising any of their powers hereunder, but their assent to any action proposed to be taken pursuant to any powers herein granted, may be evidenced by a writing, telegram or radiogram, setting forth the approval by any Trustee thereto, or by the execution of any written instrument evidencing the taking of any action by the Trustees hereunder."

Article XVI contained the following provisions:

"The Trustees are authorized and empowered to construe this agreement and their construction thereof or action thereunder in good faith shall be conclusive and final upon all of the parties hereto. The Trustees may supply defects or omissions or reconcile any inconsistencies in this agreement and make such modifications as in their judgment they may deem necessary or proper to carry out the same properly and effec-

tively and their judgment as to expediency or necessity shall be final. This agreement is in all respects to be liberally construed to enable the Trustees to carry into effect the purposes and intent of this agreement.''

Edwin Lisle died in August 1936. This created a vacancy among the trustees. There is no dispute on that proposition. In November 1936, the appointment of a successor was brought up by Capper, but Wurzer contended that the five should continue as they were doing. Nothing was done at that meeting. On May 27, 1937, the matter was again discussed. At that meeting, Anderson, Burrmann and Capper were prepared to support the appointment of Buenga. Walsh was absent and Wurzer contended for delay. As a result of the discussion, the following record was made:

''On motion of Henry C. Wurzer, duly seconded by D. M. Anderson, that each Trustee nominate two candidates and that such candidates be voted upon and the two receiving the highest votes become the Trustees to serve on the Board of the Third and Brady Street Trust.

''The above resolution amended by Henry C. Wurzer, duly seconded by D. M. Anderson, that said nominees' names be submitted to the Secretary at least ten days before the next special meeting of the Board of Trustees, and the Secretary is hereby instructed to forward said names to the Trustees at least ten days before the said election, and that said candidates be presented to the Board of Trustees at said meeting for the election of one or more new Trustees. That said election be held at the next meeting of the Board of Trustees on or before June 30, 1937. Motion unanimously carried.''

Following the meeting of May 27, 1937, plaintiff Lambach undertook to solicit and secure support from a majority of the unit holders for the appointment of himself as trustee to succeed Edwin Lisle, deceased, and appointment of plaintiff Vernon Lisle as trustee to fill the other vacancy provided for by the trustees on May 27, 1937. Lambach was supported by

Walsh and Wurzer, both of whom voted their units in favor of such appointments. On June 15, 1937, Capper and Burrmann learned of Lambach's activities and sought the support of Anderson in the appointment of Buenga. Capper, in the presence of Burrmann, called Anderson on the telephone about four or five o'clock in the afternoon of June 15, 1937. During the telephone conversation, the three of them at that time all voted for Buenga to be trustee. The following morning, June 16, 1937, Burrmann, as secretary, sent telegrams to Wurzer, Walsh, Capper and Anderson, asking them to wire confirmation of the appointment of Buenga as trustee. The telegrams were substantially identical and read as follows:

"Please wire confirmation of appointment of Carl A. Buenga as trustee of Third and Brady Streets Liquidation Trust to fill the vacancy caused by death of Edwin Lisle. Kindly wire confirmation or rejection."

That same morning, Anderson, Burrmann and Capper all sent telegrams of confirmation of the appointment of Buenga, reading as follows:

"I hereby nominate and appoint Carl A. Buenga as a trustee of Third and Brady Streets Liquidation Trust to fill the vacancy caused by death of Edwin Lisle."

Buenga qualified that morning by accepting the appointment, acknowledging his acceptance and filing the same with the county recorder of Scott county, Iowa.

In the meantime, Lambach had contacted Anderson at Albia, about the time that Capper called him on the telephone, and solicited his support for the appointment of himself and Lisle. Anderson declined to support such appointments. Lambach then telephoned Dr. Lomas at Villisca to contact Lisle and arranged to meet them at Villisca. That night about 9:50 p. m., Lambach and Lisle canvassed their documents, determined they had a majority of the unit holders and undertook to accept appointments as trustees, Lambach, as trustee successor to Edwin Lisle, deceased, and Vernon Lisle to fill the vacancy

caused by the nonappointment of the seventh trustee provided for in the trust. On the morning of June 16, 1937, Lambach and Lisle sent Burrmann the following telegram:

"There having been deposited in our hands written instruments of appointment as successor trustees executed by the holders of a majority of the outstanding certificates of interest of Third and Brady Streets Liquidation Trust we take this occasion to advise you of our acceptance of such appointment duly acknowledged in accordance with the provisions of Article Eleven of said trust indenture Stop Such instruments will be recorded in due course."

The instruments of appointment upon which the plaintiffs rely were executed by a majority of the unit holders. The genuineness of the signatures is not controverted. All of the instruments purport to be acknowledged. A large number of the acknowledgments are admittedly fatally defective. If valid acknowledgments were necessary to make the instruments effective, then plaintiffs failed to secure a majority. If the acknowledgments are surplusage and may be ignored as such, then plaintiffs had the required majority.

The court found and determined that, on June 15, 1937, there existed two vacancies in the membership of the board of trustees, more than 60 days had elapsed since each vacancy had occurred, at that time the sole power of appointment was vested in the unit holders, plaintiffs procured the execution of writings by a majority of the unit holders and duly executed and acknowledged an acceptance of appointment, the appointment of each was valid and complete and vested in them title as co-trustees, the purported appointment of Buenga was ineffective, null and void, and no title vested in him. Decree was entered accordingly and the costs were assessed against defendants Anderson, Burrmann, Capper and Buenga in their individual capacities. From such decree, said defendants appeal.

█  I. The first question to be determined is whether there were two vacancies among the trustees. Appellants contend that there was only one, which was occasioned by the death

of Edwin Lisle, that to increase the number of trustees to seven required an amendment to the declaration of trust, and, since no such amendment has ever been attempted, only one vacancy existed.

Appellees' contentions, to the effect that there were two vacancies, are stated as follows:

"Until such time as the Board of Trustees, which had the power to determine for itself and the Unit Holders, took some affirmative action, no one could say what the membership of the Board was to be. That it was intended to be seven originally, there is no doubt. That it could be seven there is no doubt. That the Board of Trustees alone could determine the matter, there is also no doubt. * * * Certainly there is nothing in law or in the agreement which would preclude the creators of a Trust from providing that the number of Trustees might be in excess of the actual creators. That is what was done in this case. Now if the Trustees, who had the exclusive power to construe the document and interpret it in relation to the then existing facts, decide that the situation is such that without amendment they could fill two positions, they have decided, their number then being five, that there were two positions to fill. It cannot be argued that only one of these was a vacancy and that an amendment was required to fill the second one, because the Trustees themselves have decided that there was no amendment necessary and hence decided that there were two vacancies."

We are of the opinion that appellees' contentions are sound. The declaration of trust provided that the number of trustees should at all times be not less than five nor more than seven. It granted the trustees broad powers of interpretation. The action of the trustees on May 27, 1937, constituted an interpretation to the effect that there were two vacancies. The court was right in so holding.

■. II. This brings us to the question: Who had the power to fill such vacancies? The court held that only the unit holders had such power. In this the court erred.

1182

As to the vacancy, created by the death of Edwin Lisle, there is no question but that the vacancy was not filled within 60 days after it occurred and the unit holders had the power to fill such vacancy, but we are satisfied that such power was not exclusive. The instrument does not so provide. As above pointed out, the trustees had broad powers of interpretation. The action of May 27, 1937, was not only an interpretation to the effect that there were two vacancies, but was also an interpretation that the trustees had the power to fill both of them. Such interpretation was within the power of the trustees and within the contemplation of the instrument.

A careful study of the declaration of trust convinces us that the spirit of the instrument was to grant all power that could possibly be granted to the trustees. The unit holders were given few, if any, rights, and almost as few privileges. Counsel for appellees, who prepared this instrument, frankly states: "A reading of this Trust Agreement will indicate that it was, as of necessity all such documents to be legally effective must be, highly undemocratic and unrepresentative."

When the instrument is viewed from the four corners, and the predominant philosophy of it is given effect, it seems obvious that it was not intended to give the unit holders exclusive power to appoint a successor trustee in the event that a vacancy were not filled within 60 days after it occurred. The unit holders were given concurrent power, but not exclusive. Such was the interpretation of the trustees. As to the vacancy which resulted from the death of Edwin Lisle, on June 15, 1937, the unit holders and the trustees had concurrent power and authority to fill the same.

As to the vacancy which resulted from the increase of the number of trustees from six to seven by the action of May 27, 1937, the unit holders had no right whatever to fill such vacancy on June 15, 1937. The exclusive right to fill such vacancy was then vested in the trustees. The court erred in holding otherwise.

It will be noted from the contentions of appellees hereinbefore quoted that, until May 27, 1937, no one could say what

the membership of the board was to be. The board alone could determine the matter. No determination was made until that date. Accordingly, until that date, there was no basis for any assertion that a vacancy existed because the number of trustees was less than seven. The right of the unit holders to fill a vacancy arises only in the event the trustees fail to act within 60 days after the vacancy occurs. On June 15, 1937, only 19 days had elapsed. Also, the only terms of the declaration of trust which provide that the unit holders have a power of appointment are the following, "if within sixty (60) days after the resignation, disability, death, removal or inability to act of any of said Trustees, no successor or successors thereto shall be appointed, then, in such event, the holders of certificates of interest representing a majority of outstanding units by a writing or writings may appoint such successor or successors." This vacancy was not the result of "the resignation, disability, death, removal or inability to act of any of said Trustees." No 60-day period had existed following a vacancy resulting from the occurrence of the kind of contingency which was necessary to vest the right of appointment in the unit holders. Accordingly, the appointment of Vernon Lisle as trustee by the unit holders was ineffective and void. The court erred in holding otherwise.

III. Turning to the appointments of Lambach and Buenga, we find that both of these men were appointed to fill the vacancy which occurred by reason of the death of Edwin Lisle. We have already determined that both the unit holders and the trustees had the right to make this appointment. If one group exercised such right of appointment in accordance with the declaration of trust, that would preclude the other group from undertaking to exercise the same right. Accordingly, it is important to determine which group exercised the right of appointment first. We hold that the trustees acted first, the appointment of Buenga is valid and the unit holders had no right to appoint Lambach.

As heretofore pointed out, Article X provides, "The Trustees are not required to meet for the purpose of exercising their

powers and duties hereunder." Also, Article XI provides, "It shall, however, not be necessary for the Trustees to formally assemble for the purpose of conducting the affairs of this Trust or exercising any of their powers hereunder, but their assent to any action proposed to be taken pursuant to any powers herein granted, may be evidenced by a writing, telegram or radiogram." The three trustees, Anderson, Burrmann and Capper all voted for Buenga's appointment between four and five p. m., June 15, 1937. The action was then taken. It was evidenced by the exchange of telegrams on the following day. The trust agreement does not provide that the telegrams are the only evidence that can be used to establish such action. It merely provides that the action may be so evidenced. Appellees contend that the telegrams are the only evidence available and that we are limited to that evidence in determining the time when the action occurred. However, the oral testimony which established that the action was taken on the afternoon of June 15th was not objected to at the trial, and it established that the action was taken on June 15th. The telegrams which were introduced by the appellees do not destroy the effect of such oral testimony. They are consistent with it.

Appellees also contend that the appointment was not complete until Buenga qualified by executing a written acceptance and acknowledging the same. Such an instrument was executed by him on the 16th of June, which was subsequent to the execution of a similar instrument by Lambach on the night of June 15th. However, the right of the unit holders to act is not conditioned upon the failure of the appointee to accept the appointment, but solely upon the failure of the trustees to make the appointment. The words used are, "if * * * no successor or successors thereto shall be appointed." The New Century Dictionary defines the word "appoint" as follows: "To fix, constitute, or ordain; prescribe; settle; also to assign authority to a particular use, task or office; allot; designate." The trustees designated Buenga as the successor to Edwin Lisle on the afternoon of June 15, 1937. The unit holders did not undertake to designate Lambach as such trustee until several hours later.

Their attempt to then appoint Lambach came too late. In view of such holding, it is not necessary to discuss or decide many other questions argued in the briefs relative to the appointment of Lambach.

Appellees have filed a motion to dismiss which was submitted with the case. The motion has been carefully considered. It is overruled. Appellees also filed a motion to strike appellants' reply argument. This motion is well grounded. It is sustained.

By reason of the foregoing, the decree of the court below is affirmed in so far as it determines that, as a result of the action of the trustees on May 27, 1937, two vacancies existed in the board of trustees of this trust. In all other respects, the decree is reversed and the cause is remanded for the entry of a decree in harmony with this opinion.—Affirmed in part; reversed in part.

BLISS, SAGER, HALE, STIGER, and OLIVER, JJ., concur.