(No. 30670.—

CORN PRODUCTS REFINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GEORGE FISCHER, Defendant in Error)

*Opinion filed January 19, 1949.*

CASSIDY, SLOAN & CRUTCHER, of Peoria, for plaintiff in error.

WILLIAM H. BECKWITH, of Peoria, for defendant in error.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiff in error was granted a writ of error from the circuit court of Tazewell County to review the judgment of that court confirming the decision of the Industrial Commission which sustained and affirmed the award by the arbitrator of the claim of respondent, George Fischer, under the Workmen's Compensation Act.

On March 1, 1944, claimant filed an application for adjustment of claim dated February 24, 1944, for the loss of a testicle under section 8(e) of the act together with compensation for temporary total disability and medical

expense. The questions in dispute are those of temporary total disability; whether claimant sustained an accidental injury which arose out of and in the course of his employment; the medical and hospital bills; and whether due and proper notice of the injury and claim for compensation was given the employer.

Claimant, George Fischer, age 49, testified as follows: That he had six children living under the age of sixteen on July 30, 1943, the date of the alleged injury; while employed in the company's factory he was moving a heavy piece of gluten weighing several hundred pounds; the company foreman was pushing on the same piece of gluten and in order to get it through the doorway, it was necessary for him to lift it alone over a sill while the foreman pushed; while so lifting he felt a sharp pain in his right groin and became sick, which he immediately reported to Sweitzer who told him to go to the locker room "and lay down for a little while;" he did so and vomited twice, then drank some black coffee to settle his stomach; thereafter he was told not to lift anything and later did a little sweeping; his right groin was swollen that evening; he tried to go to work the next day, but became sick on the bus and felt like vomiting again; reporting that day, he immediately returned home; several days after the accident he had a conversation with Mr. Velde, the personnel man, and told him about an "awful sharp pain" and stated he did not believe he would be able to work for several days or maybe a week or two; Velde told him he could go to a doctor, who gave him some pills for a run-down condition; he told the latter about the pain in his groin, but the company doctor paid no attention to it; later claimant went to another doctor in Pekin and was given a shot in the arm and different kinds of medicine and was under his care until the middle of January, making 16 or 18 trips, at least, between the first part of September and the middle of January, and returned to work about the first of November for guard duty; he

saw a company doctor, pursuant to a notice given him, and the doctor looked at him and gave him a report to take to the company which he returned to Mr. Velde; remaining on guard duty one night, Velde told him he was in no condition to go back; he returned a month or six weeks later to try light work and worked three days and the pain in his groin was getting worse and his right testicle was swollen then. He again returned for three days on December 7, 8, and 9, 1943, and again on Christmas day and worked until January 10 on guard duty, walking beats; during this time the pain became sharper and the swelling increased. As the attending physician had gone to California, he saw another doctor who recommended an operation immediately. He then went to Dr. Burroughs of the Hanna Clinic in Peoria. On January 24, 1944, he went to the hospital for an operation, prior to which he had a conversation with Mr. Velde and Mr. Gillen of the company and Velde sympathized with him, but told him they could not pay the hospital and doctor bills, nor compensation. On January 25 he was operated on at St. Francis Hospital and the right testicle removed; he remained at the hospital eight days and was under Dr. Burroughs's care until between the middle of May and June 1; he had no trouble or swelling in his groin or right testicle prior to July 30, 1943; but had continual pain from the time of the lifting and first noticed the swelling in the testicle itself about September or October; at times he could not stand; and working at guard duty and light work, requiring walking, made the pain and swelling worse. He has worked for others since the operation as a laborer.

Dr. Burroughs testified he first examined claimant January 22, 1944, and the examination revealed an enlarged right scrotum and he removed the right testicle; there was a hydrocele, which is a collection of fluid, in the membrane about the testicle called the tunica vaginalis and this membrane when stimulated increases an excessive amount of

fluid which is not absorbed; thus, a so-called hydrocele develops and this can be caused by a tension or strain upon the abdominal muscles, such as lifting a heavy object in a stooping position which would extend that strain down into the scrotum and into the testicle; that nature has to supply the muscles that go about the cord and because of the anatomical structure that area is more subject to strain than any other part of the abdomen; that the condition he found followed and was due to the injury described in a history by the patient, and could be caused even if the swelling in the scrotum or testicle did not occur from one to three months after the strain; that such was both a possibility and a probability and that infection and tumor could cause a similar condition; there was no evidence of hernia; that the patient had a pathological report showing a tubercular epididymitis. The doctor further testified that in his opinion this tubercular condition in and of itself could produce a stimulation necessary to cause a hydrocele to form, but in his opinion the trauma caused the hydrocele.

The claimant and Dr. Burroughs were the only witnesses to testify on behalf of the claimant. A bill of the first attending physician, the hospital bill, and an itemized bill of the Hanna Clinic were introduced and admitted in evidence over objection, and the claimant rested.

The company produced a number of witnesses in defense against the claim. The first testified he treated claimant for a nervous stomach; that October 11, 1943, was the first time complaint was made of a swelling of his right testicle; on that date he diagnosed the condition as a right epididymitis; that it was infective in nature. On direct examination this doctor testified that there was no causal connection between the alleged injury and the epididymitis and that the tuberculosis in the tissue was the causative factor. On cross-examination, however, it appeared that while claimant had consulted this witness as a private patient, and his wife and daughter were also his

accounts, he was "temporarily" a doctor for the respondent company, the plaintiff in error here. He further testified that a patient with tuberculosis of the organs described could "light up" or make the disease worse by heavy straining and, on redirect, that it would be manifested sooner than two and one-half months.

The respondent company also called a medical expert who did not attend or know claimant, who testified in his opinion there was no relationship between the alleged strain and subsequent production of an epididymitis some ten weeks later. The hypothetical question assumed the ten weeks' time limit before the swelling manifested itself and the question was permitted to be answered over the claimant's strenuous objection. The doctor further testified his opinion would be the same as to the causal relationship between the alleged strain and the hydrocele found at the time of the surgery on January 24, 1944; that the time element was too long. On cross-examination this expert testified it is possible to have the condition show ten or eleven weeks later, but not probable.

Another medical expert testified there was no causal connection between the presence of the hydrocele and the alleged trauma and that such a strain would not aggravate or accelerate the tubercular condition. The hypothetical question put to this witness also assumed the lapse of time of ten weeks for the condition to appear to be a proved fact in the case.

Before the Industrial Commission on review, another physician was called as an expert who testified in his opinion there was no connection between the strain and findings, and negatived the claim that the strain produced or aggravated the tuberculosis, although trauma could do it where there would be a slight hemorrhage; that direct trauma might light up an epididymitis, and epididymitis might light up from other things; that trauma could cause a hydrocele, and that it would be hard for him to believe a strain would

cause a hydrocele, but that if the patient's resistance is sufficiently lowered the strain might have some bearing or might further lower resistance, where the pain is in the groin.

The company's personnel men, Velde and Gillen, both testified claimant never talked to them about this particular injury until after the month of January, 1944, or until after the claim was filed.

The company's principal contention here is based upon the fact that the claim depends upon the testimony of the injured employee and his doctor, only, and that the basis of the claim is in large part predicated upon the subjective symptoms of Fischer.

The case presents a very close question upon the issue whether or not the condition existing arose out of an injury incurred in the course of employment.

The fact that the testicle was found upon removal to be tubercular throws extreme doubt upon the theory the injury was traumatic in origin. No doubt the operation and removal would have been necessary in a short time in view of the infection present. Of this there can be little doubt. The principal question in the case then, other than the notice or lack of notice of the injury, is whether or not the alleged injury set in motion or "lighted up" or aggravated the condition as later pathologically found to exist. (*Chicago Park Dist.* v. *Industrial Com.* 372 Ill. 428.) Can this court say, as a matter of law, the finding is contrary to the manifest weight of the evidence? The expert medical testimony is directly conflicting. Yet all of the medical experts, save one, admit there might be some causal connection between the alleged injury and the condition as found, even though the chances thereof were remote. If this be the case, it is a question of fact to be found by the commission, and such findings will not be distrubed on appeal. *Olin Industries, Inc.* v. *Industrial Com.* 394 Ill. 593.

The company relies upon the case of *Le Tourneau, Inc.* v. *Industrial Com.* 396 Ill. 435, in which we held there was

no evidence in the record connecting the injury complained of with any accident occurring on the date in question. We think the rule in that case was correctly stated and applied to the facts in that case, but here, the record contains ample evidence, if taken as true, to sustain the award as found by the arbitrator, the commission and the circuit court. It is the province of the Industrial Commission to draw reasonable inferences from the evidence and to determine conflicts arising in the testimony, and its decision should not be disturbed unless without foundation or unless manifestly against the weight of the evidence. When the opinions of the medical witnesses are conflicting, it is difficult for lay opinions to determine with the requisite nicety upon which side the weight of evidence falls. *Macon County Coal Co.* v. *Industrial Com.* 374 Ill. 219.

The next question presented is that of proper notice. The act requires the claimant to give notice orally or in writing to his employer within thirty days after the accident. (Ill. Rev. Stat. 1943, chap. 48, par. 161.) In the present case, the foreman, Sweitzer, was working with claimant at the time of the alleged injury. Sweitzer testified he had no recollection of what occurred, but admitted "something like that" occurred at the time. The foreman sent claimant to the men's locker room to lie down awhile and knew of the situation and later put claimant to work in less strenuous labors and later came around and inquired as to his condition. These facts he does not deny. We think the finding of this jurisdictional question by the arbitrator to be fully justified by the record. *Raymond* v. *Industrial Com.* 354 Ill. 586; *Chicago Park Dist.* v. *Industrial Com.* 372 Ill. 428.

As to the contention that claim for compensation on account of the accidental injury was not made upon the employer within six months after the date of the accident, (Ill. Rev. Stat. 1943, chap. 48, par. 161,) which provision of the statute was in effect on the date of the injury, suffice

it to say we think the record contains evidence of conversations and demands by claimant upon the personnel adviser and agents of the company within the time limited by the statute and the arbitrator and commission did not err in so finding. The claim or demand for compensation need not be in writing, but may be verbal, and it is sufficient if the employer is informed by it that the employee intends to claim the benefit of the act. (*New Staunton Coal Co.* v. *Industrial Com.* 304 Ill. 613.) Here the record shows repeated conversations and a demand was made and refused the day before the operation was performed upon the employee, all within the limit of time allowed by law.

The sole remaining question is the propriety of the allowance of the necessary medical, surgical, and hospital services. These were not all provided by the employer as required by the act. (Ill. Rev. Stat. 1943, chap. 48, par. 145.) We find no error in the allowance of these items. The admissibility of this evidence was in the discretion of the arbitrator. While a more complete foundation for their admissibility in the first instance should have perhaps been laid, the arbitrator admitted them after considerable objection. If the items presented and the bills admitted were improper or unreasonable in any degree the respondent company could have inquired into the matter when the doctor for the claimant was on the witness stand, but this matter was passed over on cross-examination. There is nothing in the record to indicate the items in question totalling the sum of $295.80 were not proper, in view of our findings here, and any omissions in the foundation laid do not, in our opinion, constitute error which would warrant our disturbing the award.

The judgment of the circuit court approving the award is therefore affirmed.                    *Judgment affirmed.*