(No. 31292.—

Shell Oil Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Paul W. Smothers, Defendant in Error.)

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

CRAIG & CRAIG, of Mattoon, RAYMOND W. HOTTO, of Wood River, and GEORGE W. CUNNINGHAM and JESSE M. DAVIS, both of Tulsa, Oklahoma, for plaintiff in error.

LANSDEN & LANSDEN, of Cairo, and HAROLD G. TALLEY, of Alton, for defendant in error.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

Writ of error was granted to review the judgment of the circuit court of Alexander County which confirmed the decision of the Industrial Commission allowing compensation to Paul W. Smothers, hereinafter referred to as claimant, against Shell Oil Company, Incorporated, hereinafter referred to as Shell.

Claimant was working for Shell as a pipe fitter's helper when on February 28, 1945, he received an injury occasioned by his sliding down a vertical thirty-foot pole with great rapidity, landing on his feet, the impact causing a

temporary paralysis from his waist down and rendering him momentarily unconscious. Sliding down this pole from one floor to another was practiced by employees to save time and was done with the knowledge and consent of the employer. Severe pain followed the injury, especially in the legs and feet. Several days thereafter pain was also felt and found to be localized in the back. It was testified by a doctor that pain originating in the back might manifest itself elsewhere, such as in the legs or hips. Prior to this injury claimant was a well man and his legs and back had never bothered him.

The employer had immediate notice of the injury. Claimant received first-aid treatment at the plant and was then on the same day sent by Shell to the hospital. His feet and legs were X-rayed but no fracture was found. Heat was applied first to the feet and legs and several days later to the back. He was requested by Shell to return to work the day following the injury in order to keep down their insurance. He did report the following day but was unable to work because of pain, and in about an hour and a half was taken home. He returned to the plant on subsequent days but was never able to really work but just sat around, having been told to take it easy. There is no denial of these facts in the record.

On May 11 following the injury, claimant was inducted into the army from which he was honorably discharged July 31, 1946. While in the army he was unable to perform any considerable service. He testified that during his fifteen months of military service he did not work as much as forty-five hours. At the time of his induction the fighting in Europe had ceased and he, with others, was sent there to replace soldiers who were being relieved and sent home. He complained to the army officers constantly of pain in his back and was told at a number of camps that they were not prepared to examine and treat him but that he would get treatment a little later at some other camp.

He was finally examined, and from time to time thereafter, upon further examination of his back, the army doctors prescribed applications of heat and sometimes medicine.

Claimant tried on several occasions, while in the service, to operate a crane but this was done with difficulty owing to the weakened condition of his legs and back, with the accompanying pain. On one occasion after he had operated a crane for a few hours he had to quit, and in climbing down his legs gave way causing him to fall about two feet upon his hands and knees. This seemed to aggravate the leg and back condition and put him in the hospital for several days. Another time he tried to help in lowering the top of a piece of machinery in the nature of a concrete mixer but found he was too weak for that purpose. His efforts, however, in that connection again sent him to the hospital where he remained for seven weeks.

A short time after his discharge from the army, claimant, in an attempt to earn a livelihood, rented certain farming machinery and equipment and endeavored to farm. He soon found that he was unable physically to carry on the work of farming and had to give it up. His brother then took over the farming operations in his place.

Claimant's physical examination before induction into the army, according to his testimony, was superficial in nature. When he gave the history of his back and legs hurting he was told that he was able to peel potatoes. This examination showed no physical defects but indicated that he had been formerly sent to the armed forces for examination and inspection on March 23, 1944, and was reclassified 1-A on March 27, 1945. The report of physical examination in connection with his discharge shows a spine injury and leg and pelvis trouble and nervous trouble in 1946; that he was treated at 387th Station Hospital in Germany; that such condition was not incurred and did not exist prior to entrance in military service and was not aggravated by but incurred while in military service.

Claimant made claim against the government for service incurred disability which was disallowed. We are asked to deny him compensation because it is said he made claim against Shell and also against the government for the same injury. This he should not have done. Should he, however, be entitled to compensation because of the original injury received while working for the employer, his subsequent erroneous claim against the government would not bar his recovery. If a misstatement of facts were made we are inclined to believe it applied to the government claim rather than to the one before us. Yet his application for compensation to the government was not entirely misleading because it contained these words: "Former injury to both legs and pelvis prior to service (from fall Feb. 28, 1945, weakened the legs and basic training and service aggravated this condition." The doctor's affidavit accompanying said application, after stating that Smothers was apparently in good condition until he sustained an injury when he jumped from a vehicle while on duty in Germany, made this further statement: "In my opinion, this man should be examined and evaluated with reference to his Service aggravation of an EPTS injury." The letters EPTS are shown to mean "existing prior to service."

It is contended by Shell that the injury did not arise out of and in the course of the employment. We are of the opinion the arbitrator and commission properly found that it did. We certainly cannot say that the finding is against the manifest weight of the evidence, and unless that be true we will not reverse. *Crepps* v. *Industrial Com.* 402 Ill. 606; *Landon* v. *Industrial Com.* 341 Ill. 51.

Two doctors testified for claimant. One of these, Dr. Fay S. Comer, of Cairo, Illinois, where claimant resides, testified he examined him in September after his discharge from service and has treated him ever since, the last time being the day before the testimony was given. He said that on September 23, 1946, he found extensive spastic

lumbar muscles through the entire lumbar region and that claimant complained of tenderness over left sacroiliac, lumbosacral and coccyx. The doctor was sufficiently concerned after this examination to refer the patient to another orthopedic surgeon, Dr. H. R. McCarroll of St. Louis.

Dr. McCarroll examined the patient October 30, 1946, and found a very definite muscle spasm in the lumbar region and tenderness limited to the lumbosacral joint and to the area of the left sacroiliac joint. He found the patient well developed, able to stand erect without evidence of list in his spine to either side. The motion of the back was satisfactory in all directions and the lower extremities showed no changing. Straight leg raising was normal on the two sides and motion in each hip satisfactory. Deep reflexes were present and equal on two sides. The sensory examination, however, revealed some diminished sensations throughout most of the lower extremities. X rays were taken of the back in various positions. Some of these revealed an irregular line through the lower portion of the sacrum but the doctor could not tell definitely by looking at it whether it was the result of an old injury or a developmental defect. This irregular or wavy line showed in a number of the X rays and was either traumatic or congenital in origin. The doctor gave as his opinion that it was possible it could be an old fracture, the result of an old fracture sustained from injury, and he based his opinion on the fact that the lines of that type in congenital cases were usually smoother and straighter than the type shown by the X ray. He also gave as his opinion, based upon reasonable certainty and from a medical and surgical standpoint, that there could be a causal connection between the injury complained of and the condition found by him upon examination of the patient. He gave as his further opinion, based upon a reasonable certainty from a medical and surgical standpoint, that the condition of the patient as found by him is permanent although the symptoms re-

sulting from it might vary from time to time. He testified that if there was a fracture as indicated by the X rays it would have required considerable force to produce it and it would have caused immediate pain.

Shell called Drs. Weir and Murphy, neither of whom had ever seen claimant. Their testimony was largely based upon the X rays. Both of them gave as their opinion that the wavy or irregular line referred to was a congenital defect and that, if there were a fracture, immediate pain would have resulted therefrom and the patient would have been disabled. Dr. Murphy testified, however, that in soft tissue injuries it is not unusual for pain to appear some time after the accident and that muscle spasm is an objective symptom of a back injury. He further testified that "Muscle spasm would indicate a disabling injury. If the petitioner had muscle spasm at the time these X rays were taken I would say that such would not be due to a fracture but could be due to a soft tissue injury." He also said that muscle spasm is objective, something you can feel, but it also can be voluntary and involuntary; that if an individual has recurrent attacks of low back pain he soon gets so he can contract those muscles. He further testified that muscle spasm would not show up in an X ray.

Shell contends that claimant cannot recover because the muscle spasm shown to exist is within his physical or mental control, and subsection (i)3 of section 8 of the Workmens' Compensation Act bars him because of that fact. One doctor testified that muscle spasm can be voluntary and involuntary. There is no evidence that claimant voluntarily produced the muscle spasm shown to exist. Dr. Comer said the pain was real. It is not likely that claimant could consistently deceive all who examined him during the many times that his back was under observation. We do not believe the statute intended to deprive an injured person of compensation who otherwise would be entitled thereto merely because an objective symptom

proved to exist might be within his physical or mental control.

It will be noted that the claim for compensation is not based upon an actual fracture in the lumbar region but is based upon disability to the feet, legs and back. The testimony of the doctors concerning a soft tissue injury is not at variance except the Shell doctors say that a soft tissue injury would likely heal in a shorter period of time than elapsed here. Where medical or surgical experts disagree and the commission believes and acts upon the evidence of one side as against the other, its finding should not be disturbed unless against the manifest weight of the evidence. *Corn Products Refining Co.* v. *Industrial Com.* 402 Ill. 250; *Chicago, Wilmington and Franklin Co.* v. *Industrial Com.* 400 Ill. 60; *Olin Industries, Inc.* v. *Industrial Com.* 394 Ill. 593.

The injury occurred February 28, 1945. Application for adjustment of claim was filed February 13, 1947. If the period of claimant's military service is not deducted from the time between the injury and the filing of the application it is obvious that the application was not filed within one year from the date of the injury as required by section 24 of the Workmens' Compensation Act. (Ill. Rev. Stat. 1945, chap. 48, par. 161.) October 17, 1940, by Congressional action it was provided "The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service * * * whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service * * *." 50 U.S.C.A. App. Sec. 525.

If said act of Congress is applicable to this case then claimant's period of military service should be deducted in

computing the time between date of injury and filing of application for adjustment of compensation. With that period deducted the application was filed within the time required by the statute. It is argued by Shell that the act of Congress cannot apply in this case because the time limit provided by the Workmens' Compensation Act is not a statute of limitations but is an integral part of the enactment creating a right that does not exist at common law, and provides the time within which the right may be availed of. It cites a number of cases holding that where there is a limitation of time in an inherent part of a right unknown to the common law and created by statute, time is of the essence and there is no right unless the action or proceeding to enforce such right is commenced within the statutory limit and that the lapse of the statutory period operates to extinguish the right altogether. Generally, that principle is correct and applicable but we are considering here a provision enacted by Congress under emergency war conditions and Congress has almost unlimited powers in such situations.

In *O'Brien* v. *Brown*, 403 Ill. 183, where the applicability of the Emergency Price Control Act of Congress was considered in a case involving the provisions of a lease and the rents provided for therein, we cited with approval *Regan* v. *Kroger Grocery & Baking Co.* 386 Ill. 284, where it was said: "The laws of Congress are as much the laws of this State as the enactments of our own legislature. Article VI of the Federal constitution provides: 'This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the judges in every State shall be bound thereby * * *.' Congress has power to confer jurisdiction on State courts. [Citations.] It also has the power

to regulate procedure in State courts in the enforcement of Federal laws. [Citations.]"

We were considering an application for continuance as affected by section 201 of the Soldiers' and Sailors' Civil Relief Act of 1940 in *Continental Illinois National Bank and Trust Co.* v. *University of Notre Dame du Lac,* 394 Ill. 584. We there said: "This statute confers substantial rights and should be liberally construed. It was considered by the Supreme Court of the United States in *Boone* v. *Lightner,* 319 U. S. 561, 63 S. Ct. 1223. It was there said: 'The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obligated to drop their own affairs to take up the burdens of the Nation.' "

In *Illinois Nat. Bank* v. *Gwinn,* 390 Ill. 345, the period of redemption from the sale of real estate was involved and the applicability of the Soldiers' and Sailors' Civil Relief Act of 1940 thereto. We there said: "This provision of the Federal statute must be regarded as written into our own statutes of redemption and, in effect, amending such statutes by giving additional time for redemption in certain cases. [Citation.] It is not merely directory or permissive, but is imperatively controlling and automatically extends the period of time allowed for redemption in all cases coming within the application of its terms. It is evident that the provisions * * * are self-executing and that it was not the intention of Congress to make it discretionary with the court whether, under the facts of a particular case, an extension of time for redemption should be had."

The last three cases referred to, while not involving the same questions as presently before us, clearly indicate our position with reference to the applicability of the provisions of the act when called in question under the given circumstances.

*Parker* v. *State,* 57 N.Y.S. 2d 242, involved a cause of action against the State for the difference between amounts of claimant's salary as a State employee and his pay as an army officer while on active military duty. There the statute required the filing of a claim against a municipality previous to the commencement of an action thereon which had been held to be a condition precedent to the maintenance of such action. New York has a statute similar to section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940. It was there held that both the Federal and the State acts "were intended to modify not only those statutes properly called statutes of limitations, by which times are fixed for the bringing of actions, but statutes creating a right of action which did not exist independently of the statute where the time for bringing such an action is limited in some way or a condition precedent is imposed by the statute."

In referring to the Soldiers' and Sailors' Civil Relief Act of 1918, in substance the same as the present act, it was said in *Clark* v. *Mechanics American National Bank,* 282 Fed. 590: "The language of section 205 of the act of Congress does not use the words 'statute of limitation.' The words 'any period * * * limited by any law for the bringing of any action,' from which the period of military service is to be excluded, are broad enough to include every form of action by which a soldier's and sailor's right is affected. * * * A statute of this nature should be liberally construed in favor of the rights of the man engaged in military service, absorbed by the exacting duties required of him, and unable to give attention to matters of private business. No reason can be perceived why the extension of time for bringing actions granted by section 205, which expressly covers 'any action,' should be denied in cases where a statute creates the cause of action." While some of the cases cited by Shell indicate a view contrary to that expressed by the ones above referred to, we believe

a sound and reasonable construction requires us to hold the act of Congress applicable in this case.

Shell argues that there can be no recovery by claimant because he did not claim compensation within the six months' period as provided by statute. As we read this record that issue is not in the case. It is common knowledge that in compensation cases the arbitrator usually determines from counsel the matters in dispute and those about which no dispute exists. He then dictates the stipulation of the parties into the record. In this case counsel for Shell said: "Before we make any stipulation at all comes now the Respondent and moves to dismiss the Petitioner's application because the same shows on its face it was filed more than one year after the date of the alleged injury and this Industrial Commission has no jurisdiction." The arbitrator let the motion to dismiss go in and reserved the right to rule on it. The stipulation dictated by the arbitrator was prefaced by these words: "Let the record show that counsel for Paul W. Smothers, Petitioner herein, and counsel for Shell Oil Company, Incorporated, Respondent herein, stipulate and agree," etc. After certain other facts were covered the stipulation then says:

"The questions to be proven here are, first, whether or not the accidental injury arose out of and in the course of employment.

"Two, whether claim for compensation on account thereof was filed within the time required under the provisions of the act."

Other questions to be proved, not pertinent here, then followed in the stipulation. The paragraph numbered "Two," of the questions to be proved, is the one in question here. Shell contends that it refers to the six months' period in which demand for compensation must be made, while claimant takes the position that it refers to the filing of his application for adjustment within the one year period of the statute. A *claim* for compensation is not required

to be *filed*. It need not be in writing but a verbal notice is sufficient. *Corn Products Co.* v. *Industrial Com.* 402 Ill. 250.

Where a stipulation covers certain facts and then specifies the remaining questions to be proved, proof as to all other questions is waived. There is no doubt that the one-year provision of the statute remained in dispute and in the case to be proved. Shell does not concede that it may be disregarded but puts that issue clearly in the case by its motion to dismiss and argues it.

The arbitrator and the commission found that they had jurisdiction. Shell argued lack of jurisdiction before the commission and the court, but both decided against its contention. It made no effort to have the stipulation stricken or modified but merely took the position that it did not cover the six months' provision and that that issue was still in the case. As long as the stipulation stands it is conclusive between parties and cannot even be met by evidence tending to show that the facts are otherwise. *Ward & Co.* v. *Industrial Com.* 304 Ill. 576; *City of Chicago* v. *Drexel*, 141 Ill. 89.) In the *Ward & Co. case* we said: "One of the purposes of the Compensation act is to secure a speedy and economical settlement of claims for industrial accidents, and stipulations tending to expedite the hearing should be encouraged rather than discouraged by the courts, and should be enforced unless good cause is shown to the contrary. Parties will not be relieved from stipulations in the absence of a clear showing that the matter stipulated is untrue, * * *."

The commission being familiar with the manner in which its arbitrators handle matters by way of stipulation and having the stipulation before it and having determined that it had jurisdiction, we will not disturb its finding on that point. All other points have been considered but none of them require a reversal of the judgment and it is accordingly affirmed.

*Judgment affirmed.*