860 Lake Shore Drive Trust, a Trust Created Pursuant to an Agreement Dated as of April 1, 1949, Between Ross J. Beatty, Jr., George F. Brown, and Frank Katzin, as Managing Trustees, and Trust Company of Chicago, as Trustees; Deforest S. Colburn, Frank W. Prindiville, and Jerome S. Selig, as Managing Trustees under Trust Agreement Dated April 1, 1949, and Known as 860 Lake Shore Drive Trust, Appellants, v. William P. Gerber, Appellee.

Gen. No. 47,420.

First District, Third Division.

June 27, 1958.

Rehearing denied October 2, 1958.

Released for publication October 23, 1958.

1

Goldberg, Devoe, Shadur & Mikva, of Chicago (Milton I. Shadur, Abner J. Mikva, and Marshall J. Moltz, of counsel) for plaintiffs-appellants.

Goldberg & Levin, of Chicago (Mayer Goldberg, and Burton Berger, of counsel) for defendant-appellee.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

On July 22, 1957 plaintiffs instituted an action in forcible entry and detainer for possession of an apartment occupied by defendant under the terms of a written lease. They had terminated defendant's tenancy after his continuous refusal to comply with House Rule 13 contained in the lease which excluded animals and birds from the demised premises, except by special permission of the lessor. The case was heard by the trial judge sitting without a jury, and at the close of the presentation of plaintiffs' evidence, the court sustained defendant's motion for a finding and judgment in his favor, from which this appeal is taken.

The salient facts disclose that the 860 Lake Shore Drive Trust consisted of Building One (880 Lake Shore Drive) and Building Two (860 Lake Shore Drive) in a housing project located at 860–880 Lake Shore Drive in Chicago. The two buildings were operated as a single unit, and apartments were numbered consecutively from Building One through Building Two. On the fourth floor of the project, apartment numbers in Building One ran from 4–A through 4–H, and in Building Two from 4–J through 4–M. Plaintiffs' statement of claim sought recovery of "Apartment 4–C, 860 Lake Shore Drive," whereas defendant resided in Apartment 4–C, Building One, 880 Lake Shore Drive; there was no Apartment 4–C in Building Two; hence, defendant's apartment was the only one in the entire project designated as 4–C.

When the error was discovered in the course of trial, plaintiffs moved to amend their complaint on its face to recite that the premises demanded were located at Apartment 4–C, 880 Lake Shore Drive. Initially the

3

court granted plaintiffs' motion, but upon objection of defendant reversed itself and held that it had no power or discretion to permit plaintiffs in a forcible entry and detainer proceeding to amend their complaint to correct a typographical error made in describing the premises. Defendant never urged that he had been prejudiced by the error and, in fact, conceded that he had received the notice to which he was entitled under the terms of his lease. The apartment in question was the only one in the project occupied by defendant.

It was urged by plaintiffs that inasmuch as the 860 and 880 Lake Shore Drive Buildings were operated as a single unit within a housing project, the address given in the complaint described with reasonable certainty the premises sought to be recovered since there was only one Apartment 4–C in the entire project. The court, however, held that the address given in plaintiffs' complaint did not describe with reasonable certainty the premises occupied by defendant.

The failure of the court to permit plaintiffs to amend their complaint to conform to the proofs, and the ruling that the address as stated did not describe the premises with reasonable certainty were relied upon by plaintiffs as two of the errors which were committed by the trial judge. In addition to the foregoing rulings, the court decided that plaintiffs Deforest S. Colburn, Frank W. Prindiville, and Jerome S. Selig, the successor managing trustees, had not shown wherein they were the proper parties to maintain this action, holding that these plaintiffs failed to establish that notice of their appointment was given to the certificate holders of the trust, that this notification provision was an integral part of the appointment procedure, and that accordingly plaintiffs had failed to show that they validly qualified as managing trustees.

The trust agreement, entered into April 1, 1949 and amended November 20, 1950, established the 860 Lake

4

Shore Drive Trust; it was made by and between Ross J. Beatty, Jr., George F. Brown, and Frank Katzin, as managing trustees, the Trust Company of Chicago, as trustee, and the certificate holders. It was a mutually owned Massachusetts-type business trust, set up for the purpose of constructing, owning, and operating, as a co-operative, two apartment buildings located at 860–880 Lake Shore Drive, subsequently popularly known as "the Glass Houses." Plaintiffs were successor managing trustees and were appointed to fill vacancies caused by the resignations of their predecessors in office. Colburn was appointed by the Trust Company of Chicago on December 15, 1953 and duly accepted his appointment in writing two days later. Prindiville was appointed by the managing trustees on April 26, 1955 and accepted his appointment in writing on the same date. Selig was appointed by the managing trustees on June 23, 1955 and accepted his appointment in writing on the same date. The trust agreement governed and fixed the relationship between the managing trustees, the corporate trustee, and the certificate holders (the beneficiaries of the trust). The managing trustees, who served until their death, resignation, refusal or incapacity to act, were given broad power and authority to manage the business affairs of the trust and to treat the trust property as if they were its absolute owners. Furthermore, the trust agreement gave the managing trustees the power to construe the trust agreement and provided that their construction should be conclusive and final upon the certificate holders. The certificate holders, whose interests were evidenced by certificates of beneficial interest, were limited to an interest in "the net income, proceeds and avails" of the trust; they had no voice in its management and assumed no personal liability as partners by reason of their beneficial interest.

5

In October 1953 defendant, as the sublessee of Rose Pink, moved into Apartment 4–C, 880 Lake Shore Drive. In March 1955 defendant purchased the certificate of beneficial interest of Rose Pink, and on March 31 of that year Rose Pink assigned her lease to Apartment 4–C, 880 Lake Shore Drive, to defendant, and said assignment was accepted by defendant and consented to by Hogan and Farwell, as agent for the managing trustees. Defendant was in continuous possession of his apartment from October 1953. House Rule 13, which was a part of defendant's lease, provided: "Animals and birds are not allowed in the demised premises, except by special permission of the Lessor." The lease required the lessee to observe and comply with the house rules and provided that the lessor might terminate the tenancy if lessee "shall violate any of the terms, covenants and conditions" of the lease, or if he "shall . . . fail or refuse to comply with any demand which Lessor . . . is permitted to make, and such violation or failure or refusal . . . shall continue for a period of thirty (30) days after written notice thereof to him . . ." The lease further provided that lessee waived any and all other notices, whether required by statute or otherwise, of any default or demand for possession, and agreed that "in the event of a termination of this lease pursuant to or by virtue of any of the events or contingencies mentioned" by certain paragraphs of the lease, "and in any case, upon the service of notice (if any) expressly required thereby and the expiration of the time (if any) therein expressly given for the curing of such default, to quit and surrender up possession of the demised premises to Lessor," and agreed "that it shall be lawful for Lessor, at its election, at any time thereafter and without further demand or notice," to sue for possession of the premises. There was a further provision in the lease that "Any notice which Lessor

6

may give to Lessee hereunder shall be sufficient if . . . (b) mailed by Lessor to Lessee by United States registered mail, postage prepaid, addressed to Lessee . . . at the premises hereby demised, and the giving . . . of such notice or demand . . . shall constitute a good and sufficient notice or demand for any and all purposes, whether under the terms and provisions hereof or otherwise."

It appears that on August 4, 1954 defendant purchased a dog named Forest Hill Madcap, III. He brought the dog on the premises in June 1955 and maintained him in the apartment continuously since that date, without permission from the managing trustees. It must be conceded that defendant's refusal to remove the dog permanently from the premises was a clear violation of House Rule 13.

The record discloses that on June 4, 1957 plaintiffs sent a registered letter to defendant, giving him formal notice that he was violating his lease by keeping a dog in his apartment, and warning him that unless he cured this violation promptly by removing the dog from the building permanently, plaintiffs would exercise the remedies available to them under the lease. It is undisputed that defendant refused to remove his dog from the premises, and that his refusal to cure the violation of his lease continued for more than thirty days after receipt of the written notice. In the circumstances plaintiffs exercised their option to terminate the tenancy, and without any further notice or demand for possession filed the instant forcible entry and detainer action on July 22, 1957.

■■ With reference to the refusal of the court to permit plaintiffs to amend the address shown in the complaint to conform to the proofs, and the ruling that the address as stated did not describe the premises with reasonable certainty, it appears that defendant was duly notified in his apartment that he was in de-

7

fault under the lease. He was served with summons at his apartment, the only apartment that he occupied in the project. The ruling by the court that it had no discretion to permit plaintiffs to amend their complaint, and that, once a typographical error had been made in describing premises sought to be recovered, plaintiffs could not amend but were obliged to institute a new lawsuit, ran counter to the amendment procedure prescribed by Rule 43 of the Civil Practice Rules of the Municipal Court of Chicago (which was substantially similar to Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1957, ch. 110 [§ 46])); the Municipal Court rule provided: "(1) At any time before final judgment in a civil action, amendments may be allowed on such terms as are just and reasonable, . . . in any matter, either of form or substance, in any process, pleading or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought . . . (3) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon such terms as to costs and continuances as may be just." We find nothing in the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1957, ch. 57, sec. 1, et seq.) or in Rule 2, Section 1 of the Civil Practice Rules of the Municipal Court of Chicago, or in any other applicable rule or statute which made Section 43 inapplicable to the amendment sought by plaintiffs.

In Spoor v. Meyer, 152 Ill. App. 470, plaintiffs' complaint in forcible detainer gave an incomplete description of the premises sought to be recovered, but objection to the insufficiency of the complaint was made for the first time on review. The court held plaintiffs' judgment void because it did not describe with reasonable certainty the property as to which the writ of restitution was to issue; but in remanding the cause, the court gave the following direction: "When this

cause is again in the Municipal Court, plaintiffs may, if they shall be so advised, move the court to amend the complaint, and it will then be the duty of that court to allow such amendment." See also Strean v. Lloyd, 128 Ill. 493, wherein the Supreme Court held, in an ejectment action, that it was within the power conferred on a trial court by virtue of the Practice Act of 1874 to permit plaintiffs to amend their complaint to describe correctly land sought to be recovered. In another early case, Snowell v. Moss, 70 Ill. 313, a forcible detainer action, decided before the amendment of the present Forcible Entry and Detainer Act, but nevertheless applicable to the facts of this case, the court, in permitting plaintiff to amend his complaint to indicate that defendant's lease was executed on October 20, 1871, rather than on October 28, 1872, pertinently observed that "The amendment made was not calculated to surprise the opposite party, but was in furtherance of justice, and properly allowed." It thus appears that even under the early decisions amendments were allowed as conducive to the furtherance of justice under the particular circumstances of each case, and errors of fact in pleadings were allowed to be remedied. The present Practice Act, as well as the Municipal Court rule, provided for amendments to conform the pleadings to the proofs; the only alternative in the instant proceeding would be to require plaintiffs to institute a new suit to correct a typographical error. Since defendant would not be prejudiced by the amendment, it would be absurd to require plaintiffs to file another suit.

■■ Although it may seem at first glance that this litigation involved only the habitation rights of a pedigreed poodle, defendant's contention that plaintiffs failed to prove that they were the legally appointed and acting trustees under the trust indenture, and therefore not entitled to possession of the premises,

9

challenged their authority to carry on the essential business activities of the trust, and the rights of approximately 250 tenant certificate holders of the buildings; and, as plaintiffs' counsel said, "If defendant prevails, then he has not only successfully violated his lease and shown that the lease is completely unenforceable, but he will have also succeeded in completely 'hamstringing' the operations of a multimillion dollar business trust, with resultant injury to all of the tenant-beneficiaries." The trial judge held that plaintiffs failed to establish that they were the managing trustees. During the course of trial, defendant stipulated as to changes in the managing trustees; he stipulated that copies of the minutes of the trust recording the changes in managing trustees were "true and correct copies or excerpts from the minutes of 860 Lake Shore Drive Trust." Later in the proceeding, the court asked defendant's counsel: "Aren't you willing to stipulate as to the changes of the trustees?" His counsel replied: "We have already done so, those are in the minutes. We [have] already done that." It has been repeatedly held that stipulations entered into by parties or their attorneys in respect to the conduct or control of their rights in the trial of a cause will be enforced by the courts. People v. Spring Lake Drainage and Levee Dist., 253 Ill. 479; People v. Kasallis, 385 Ill. 158; United States v. Rodriguez, 241 F.2d 463. In Montgomery Ward & Co. v. Industrial Commission, 304 Ill. 576, in accord, in holding a stipulation to be binding, the court pertinently observed that stipulations designed to expedite the hearing should be encouraged. To like effect, see Shell Oil Co. v. Industrial Commission, 407 Ill. 186.

 Furthermore, the introduction into evidence of the minutes of the trust and the letters of appointment and acceptance of appointment maintained by the corporate trustee established that plaintiffs were duly

10

appointed to office in conformity with the trust agreement which provided in effect that in the event of death, resignation, refusal or incapacity to act of any of the managing trustees, a majority of the remaining trustees should forthwith appoint a successor, or, under specified circumstances, the corporate trustee should designate a successor. These records stand unrebutted and unchallenged. The ruling by the court that plaintiffs failed to establish that they were the managing trustees was evidently predicated upon the provisions of Paragraph 4.11 of the trust agreement with respect to the requirement of notification to certificate holders. The trust agreement was construed by the trial court to mean that proof of mailing of notices had to be put into evidence before plaintiffs could establish that they were qualified for office. Paragraph 4.11 stated: "In the event of the death, resignation, refusal or incapacity to act of any of the Managing Trustees, a majority of the remaining Managing Trustees shall forthwith appoint a successor." This would indicate that appointment was complete when the remaining managing trustees made such appointment. Following the foregoing excerpts from Paragraph 4.11, the trust agreement provided: "notice of the appointment of such successor Managing Trustee shall be given to the Trustee and to the Certificate Holders." In similar fashion, Paragraph 4.11 continued: "In the event the remaining Managing Trustees fail to appoint a successor Managing Trustee within sixty days after such death, resignation, refusal or incapacity, the Trustee shall designate a successor Managing Trustee. The Trustee shall give notice of such appointment to the remaining Managing Trustees and to the Certificate Holders." It seems clear that whether the appointment was made by the remaining managing trustees or by the corporate trustee, the appointment was complete upon the making thereof, and upon the fulfillment of

11

any requirements that the managing trustees or corporate trustee should prescribe for the acceptance of appointment, and that notification was merely given of a completed act of appointment; and even if such notices had not been mailed out (which is not the case here), such omission would not invalidate appointments made in conformity with Paragraph 4.11. As plaintiffs' counsel pointed out, notification could be considered to be of importance only where the lack thereof substantially prejudiced the rights of a party. In the instant proceeding, neither the certificate holders nor the corporate trustee had a right to object to an appointment made by the remaining managing trustees, nor could the certificate holders object to an appointment made by the corporate trustee. The certificate holders were given no positive rights of appointment, nor could they act to remove managing trustees from office prior to the expiration of two years from the date of their appointment. Under the circumstances, the requirement of notifying certificate holders of the appointment of trustees was informational rather than jurisdictional, and not a prerequisite to qualification for office, inasmuch as the failure to receive notice in no way prejudiced the rights of any certificate holder. Defendant emphasized the fact that formal proof of mailing of notices of appointment to the certificate holders was not put in evidence. If his contention were meritorious, it would be incumbent upon the trustees to put in evidence proof of mailing of notices of appointment to certificate holders whenever the managing trustees found it necessary to file a complaint in forcible entry and detainer, or in any other proceeding. It is conceivable that in a suit between the beneficiaries and the managing trustees alleging a breach of trust the charge that the beneficiaries had not received notice of appointment of the managing trustees and were prejudiced by the absence

12

of such notice, proof of mailing might be material; but in this proceeding nothing turned upon proof of mailing of such notices. Lessee, who was being evicted for an undisputed violation of his lease, should not be permitted to collaterally attack the appointment of managing trustees under the provisions of the trust instrument.

Lastly, it appears from the provisions of Paragraph 7.02 of the trust agreement that the managing trustees were empowered to construe the trust agreement, and that their construction, when made in good faith, was to be conclusive and final upon the certificate holders and all the parties thereto. Since defendant was a certificate holder, he was bound by the provisions of that paragraph. Minutes showed that all the successor trustees were appointed in accordance with the provisions of the trust agreement and accepted their appointments. Lambach v. Anderson, 228 Iowa 1173, 293 N. W. 505, involved a business trust where, as in the case at bar, the trustees were given broad powers to interpret the instrument. The court there held that "A careful study of the declaration of trust convinces us that the spirit of the instrument was to grant all power that could possibly be granted to the trustees. The unit holders were given few, if any, rights and almost as few privileges." The opinion is precisely in point and affords a full discussion of the question raised in this proceeding.

Defendant, a practising attorney of long standing, must have realized when he signed his lease that pets were not permitted on the premises without special permission from the lessor. Nevertheless, he violated his lease by keeping a dog in his apartment. The managing trustees, charged with responsibility for managing the building and having in mind the welfare of all beneficiaries, could not permit the insistence of defendant to keep a dog in the building to continue unchallenged.

13

If the contentions of defendant, which were wholly technical in their nature, were to be upheld, it would make all leases executed by the managing trustees on behalf of the building impossible to enforce.

For the reasons indicated, we hold that the judgment of the Municipal Court was erroneous; accordingly, it is reversed, and the cause remanded with directions to allow the amendment and to enter judgment in favor of plaintiffs for possession.

Judgment reversed, and cause remanded with directions.

BRYANT and BURKE, JJ., concur.