**In the Matter of the Estate of Ralph L. Moss, Deceased. John R. Moss, Plaintiff-Appellee, v. Dorothy J. Vulgamott (Nee Licek), Defendant-Appellant. Dorothy J. Vulgamott (Nee Licek), Plaintiff-Appellant, v. John R. Moss, et al., Defendants-Appellees.**

**Gen. No. 11,048.**

Fourth District.

June 3, 1969.

N. E. Hutson, of Monticello, for appellant.

Craig & Craig, of Mattoon (Jack E. Horsley and Whitney D. Hardy, of counsel), for appellees.

MILLS, J., delivered the opinion of the court.

This appeal involves an estate in probate and two chancery cases, consolidated by the trial court. A purported stipulation was entered into in open court by counsel for the parties litigant, and this appeal was brought to challenge (1) the validity of the stipulation, and (2) whether it is enforceable.

Ralph L. Moss died on October 16, 1965. Two days later, appellant recorded a deed executed by decedent conveying to her certain interests in real estate. The will of Mr. Moss was admitted to probate in November, 1965, and appellant filed a claim in the estate in the amount of $31,168. In January, 1966, an action was filed by one of the Moss heirs against appellant to set aside the deed. The following month, appellant filed a partition proceeding directed toward land described in the deed.

One and a half years later, on June 8, 1967, the record reflects that the consolidated cases came on for pretrial conference, with appellant and her attorney, and members of the Moss family and their attorneys, present in open court. Pretrial hearing was recessed in the morning and extensive settlement negotiations then took place. Later in the same afternoon, the pretrial conference reconvened and the following interchange occurred:

"MR. HORSLEY: May the record show, if the Court please, that present in open court are Dorothy J. Licek, personally and by her counsel, and also present in open court are Kenneth Moss and John Moss, personally and by Craig & Craig, their counsel, and Mr. Arnold Moss by his counsel, Mr. Ralph Pearman, and further that Mr. Kenneth Moss is present in open Court personally and by counsel as Executor of the Estate of Ralph Moss, Deceased, and we move jointly that the cause be called for pretrial conference on this consolidated basis. Is that agreeable with the others?

187

"MR. BYERS: No objection.

"THE COURT: All right.

"MR. HORSLEY: We would like to represent to the Court that the various issues existing in these and related cases have been compromised and settled; that a formal written settlement contract is to be drawn to the approval of the attorneys involved and that it is, with Your Honor's permission, deemed advisable to report in this pre-trial conference the skeletal structure of the contract so there will be a record on it, and all parties involved will know what has been officially agreed upon. These, if Your Honor please, are the terms:

"There is to be paid to Dorothy J. Licek by the Mosses, or in their behalf, the sum of $11,082.03, and Dorothy J. Licek is to convey to the Mosses, or to whomever among them or otherwise they direct, by a deed suitable in form to the grantee or grantees all interest in any real estate involved in this estate. And by this, Your Honor, it is meant to describe whatever real estate is involved other than the property located in the City of Chrisman, which is excluded from the estate and to which the estate makes no claim. The consideration described, and the deed described, are to be placed in escrow at The Citizens National Bank of Paris, to be released· by the escrowee when Dorothy Licek has furnished, at her expense, a title policy guaranteeing the validity of the title which she conveys to the Mosses, such policy to be issued by Chicago Title and Trust Company. The details of the escrow agreement to be worked out between the attorneys. Also, that Dorothy Licek shall dismiss or withdraw all claims, complaints, petitions and demands in any of the suits involved, and that she shall release and discharge any claim or claims she has in the probate proceed-

188

ings, and that she shall, out of the proceeds to be paid to her, or otherwise, pay and discharge the claim of Paul Licek and Mary Licek and indemnify the estate and all other persons interested in the estate against any assertion further of that claim by those claimants. That Kenneth Moss shall continue as Executor, and that Dorothy Licek shall make over and assign to the Mosses any claim that she has under the will of Ralph Moss or otherwise, so that this settlement shall include a complete divorcement of Dorothy Licek from the estate and discharge of all claims she has as beneficiary under the will, claimant or otherwise against the estate. That there shall be reciprocal releases between the Mosses, including Kenneth Moss as Executor, and Dorothy Licek, so that each side discharges the other from any and all claims that either side may have against the other; that Kenneth Moss, as executor, shall have full control of estate administration affairs and assets, with the responsibilities and duties that accompany that control, with one qualified exception. One of the assets, Your Honor, is a litigated claim instituted by the decedent in his lifetime against Mass Construction Company in the Circuit Court of Macon County, with the firm of Rosenberg, Rosenberg & Bickes as attorneys for the plaintiff in his lifetime and for the executor of his estate now. As to that claim, the net proceeds are to be divided equally, when and if proceeds are produced, between Mrs. Licek on the one hand, and the Mosses or their designatees on the other, with the further proviso that Kenneth Moss as executor shall have unqualified and unlimited discretion in settlement of the Mass Claim, provided that the settlement negotiated is $7,500 or more, and if the maximum settlement figure negotiated is less than $7,500 it must, before it is accepted be reported to and approved

189

by Mrs. Licek and her attorney of record here. Also, if Your Honor please, in connection with the Chicago Title and Trust Company policy, I want to advise the Court, with Your Honor's permission, it is the purpose of the parties to move Your Honor to amend the decree previously entered in which the Court held that Mr. Ralph Moss's deed to Dorothy Licek, which was the subject matter of action 66-E-2, was fraudulent in some measure. Your Honor will recall that. The purpose of this, again with the Court's permission, will be to reconsider that aspect and modify that portion of it so that Chicago Title and Trust Company will not reject the application for insurance on the concept that there might be an equity outstanding. We will, of course, represent that to Your Honor at the time, but I did want to tell the Court that's part of what I have agreed upon, subject to Your Honor's approval.

"THE COURT: Will we have any trouble with the thirty days?

"MR. HORSLEY: We considered that, Your Honor. It was not a final and appealable order. It was left open on the question of the amount, and it did not have the section 50 language in it, so Mr. Byers' and my feeling was that the thirty days would not affect it. That it would not be a final and appealable order because it was still open on one essential aspect, namely the amount involved.

"Now, may I ask, Mr. Byers, have I correctly stated the substance of our agreement?

"MR. BYERS: Yes. Some of these understandings which have been related will necessarily result in contract-type procedures between the parties. Some will involve stipulations and orders of the Court in the various cases. It is also the understanding

that the abstract of the Chrisman property will be delivered.

"MR. HORSLEY: We will deliver that today. We have the abstract of title to the Chrisman property, and we will surrender that to counsel before we separate.

"MR. BYERS: Thank you. I think this properly represents the subject of our agreement. I am sure there are minor details that aren't here, but that's not serious.

"MR. HORSLEY: Very good.

"MR. BYERS: Also, so far as anything pending in these cases, I assume that should be continued with the idea that they all will be dismissed when we get this formal order."

Immediately thereafter, for a period of over two months, there occurred a mutual exchange of correspondence between respective counsel regarding reciprocal releases, deeds, motions, escrow agreements, suggestions, proposals, amendments, drafts and redrafts of the formal agreement. But no final agreement was executed, and in October, 1967, appellees moved for specific performance of the settlement stipulation. The motion was heard in open court, and in response to direct inquiry by the trial judge, appellant's same attorney of record agreed that all parties were present at the settlement and that no issue was involved of any attorney exceeding his authority. Appellant was again personally present in open court during this inquiry. The motion was allowed and specific performance was ordered by the court. Two months later, a new counsel for appellant came upon the scene. He entered his appearance as her "associate attorney," filed a motion for reconsideration of the court's findings on the motion for specific performance and represents her in this appeal. Although appellant's orig-

191

inal counsel of record filed his notice of lien and apparently took no further part in any of the proceedings in the trial court thereafter, it is noted that Attorney Byers has never been officially dismissed by appellant nor filed his withdrawal as her counsel of record. At the hearing on the motion for reconsideration, appellant testified at great length and with an exceptional lay familiarity with legal semantics. The pith and core of her protestations was that she did not understand the stipulation to be final and binding, and that she did not authorize her attorney to enter into the agreement.

■■■ The reviewing courts of this state have consistently held that stipulations by parties or their attorneys affecting the conduct of suits will be enforced, unless there is proper showing that any stipulation is unreasonable, violative of public morals or the result of fraud. Kazubowski v. Kazubowski, 93 Ill App2d 126, 235 NE2d 664, 668; Roin v. Checker Taxi Co., 36 Ill App2d 447, 184 NE2d 736, 738; 860 Lake Shore Drive Trust v. Gerber, 19 Ill App2d 1, 153 NE2d 253, 257. "Thus, a party to a pending litigation may waive, by stipulation, his statutory or constitutional rights and the court will hold him bound by such stipulation." People v. Spring Lake Dist., 253 Ill 479, 492, 97 NE 1042. Indeed, our Supreme court has ruled that where a defendant in a criminal case is present in open court and permits his attorney to waive constitutional rights, unless he objects he acquiesces in such waivers and is bound thereby. People v. Novotny, 41 Ill2d 401, 244 NE2d 182, 186, 187. Stipulations are looked upon with favor by the courts, since they tend to promote disposition of cases, simplification of issues and the saving of expense to litigants. The ends of justice are furthered by stipulations of settlement and the reluctance of courts to vitiate such agreements is well founded in fundamental logic. "Parties will not be relieved from a stipulation in the absence of a clear showing that the matter stipulated is untrue,

and then only when the application is seasonably made."
Brink v. Industrial Commission, 368 Ill 607, 15 NE2d 491,
492.

■ Appellant's avowals are athwart the record. She
was personally present in the courtroom on the day the
stipulation was orally announced in open court on the
record. Having made no objections or remonstrances, she
was bound by the actions and representations of her
attorney of record. And were this not enough, she per-
mitted her counsel to continue thereafter for over two
months to draft, examine, prepare changes to, and work
on the details of, the documents required to fulfill the
stipulation entered into. It was not until appellees were
forced to seek specific performance of the settlement did
appellant then obtain an "associate attorney" and file a
motion for reconsideration. This was over seven months
after the stipulation. The record is replete with admis-
sions of appellant's original counsel of record of the
efficacy of the subject stipulation. Mr. Byers was still
representing appellant at the time of the hearing on
November 24, 1967, on the motion for specific perform-
ance, and with appellant present in open court he said:

> "Then in 1967 they finally reached some kind of
> understanding, and that was the understanding dic-
> tated into the record and the court has a copy. Now,
> it's complete in that it attempted to settle claims in
> the Estate; not only claims of third parties but claims
> of the various members of the Licek family and the
> Moss family. It provided for their disposition . . .
> a calculated figure was arrived at and at some
> $11,082.03, and the mere fact it gets down to three
> cents will show the court there was quite a bit of
> negotiations as to how we got that. It was at that
> time agreed this would settle all of these proceed-
> ings."

193

There is no doubt that appellant was personally aware of the stipulation as entered into by her counsel in open court and in her presence, that she thereafter acquiesced in the stipulation and that her desire to renege comes unseasonably.

■■ It is also urged by appellant that a stipulation, like a contract, "must be clear, certain and definite in its material provisions." We agree. She argues that this stipulation does not meet that test. We disagree. A mere reading of the stipulation reproduced in this opinion reflects that all basic and material elements of the agreement are contained therein, and that the details of implementation thereof can be properly supervised by the court. The trial judge entered a series of orders to implement the stipulation, and it would unduly prolong this opinion to consider every finding and each detail of those orders. Suffice it to say that the appellant has failed to show this court, either by argument or authority, in what specifics the trial court erred. In the absence of such showing, we are not prone to disturb the detailed and exhaustive orders of implementation.

The stipulation was voluntary, valid, binding and enforceable. There must be a point of no return—a moment of finality—in all litigation. This case is no exception.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.