*In re* MARRIAGE OF DAVID VAN ZUIDAM, Petitioner-Appellee, and PAMELA VAN ZUIDAM, Respondent-Appellant.

First District (2nd Division)   No. 86—2825

Opinion filed October 6, 1987.

Regan D. Ebert, of Carl H. Ebert & Associates, and Ritsos & Ritsos, both of Chicago, for appellant.

Barry A. Schatz, of Kalcheim, Schatz & Berger, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The wife appeals from an order denying her emergency motion to stay entry of the judgment of dissolution and the entry of that judgment for dissolution of marriage.

On February 5, 1986, approximately 4½ years after the parties were married, the petitioner (hereinafter husband) filed a petition for dissolution of marriage. At that time, the husband was 32 years old and the respondent (hereinafter wife) was 30 years old. The wife earned $33,000 per year and her husband earned $30,000 per year. They had no children. Both parties were represented by counsel. A negotiated property settlement agreement (hereinafter agreement) was executed in separate counterparts on June 12, 1986. Mental cruelty was alleged in the petition as the ground for dissolution. However, the parties agreed that the husband should proceed on the basis of irreconcilable differences under the "no fault" amendment to the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1985, ch. 40, par. 401(a)(2).) A condition for "no fault" dissolution is that the parties lived separate and apart for a continuous period in excess of two years. This requirement may be waived upon the written stipulation of both spouses provided they lived separate and apart for a continuous period of not less than six months prior to the entry of the judgment of dissolution.

The matter was set for prove up before the Honorable Herman Knell on June 12, 1986. At that time, the parties lived separate and apart for more than six months, but less than two years. The husband appeared with counsel. The wife was not present in open court but was represented by counsel. Counsel for the parties stipulated in open court that the petition be amended on its face to withdraw mental cruelty and substitute irreconcilable differences as the basis for the dissolution. Since the parties lived separate and apart for only six months, the trial court relied on the representation of counsel that the parties waived the statutory two-year period for "no fault." However, the trial court instructed counsel to present a written stipulation

signed by the parties and counsel when the judgment of dissolution was presented. After hearing the testimony of the husband and reviewing the property settlement agreement dated June 12, 1986, executed in separate counterparts by the parties, the court found that grounds for dissolution of the marriage were proved; that the property settlement agreement shall be made a part of the judgment; and requested that the parties sign the judgment and stipulation, which would be presented to the court with a transcript of the proceedings. The record also reveals that the parties had already partially performed their agreement when the husband testified: "Q. You and your wife have already divided up the bank accounts, is that correct? A. Yes."

On or about August 1, 1986, in compliance with the trial court's direction, the parties and their attorneys signed and delivered the judgment of dissolution incorporating the signed agreement, the stipulation waiving the statutory period for "no fault," and a certified copy of the transcript of proceedings at the prove up. However, Judge Knell was on vacation so he was not able to enter the judgment on that date.

The husband purchased an Illinois lottery ticket with his funds on August 12, 1986. On the following day, his numbers were picked. He won $2.1 million. The wife was not aware of the lottery winnings until she read a news account on August 26, 1986. On August 27, 1986, she filed an emergency motion to stay the entry of judgment, to which the husband responded. After considering the legal memoranda filed by the parties and holding a hearing on September 29, 1986, the trial court denied the wife's motion and entered the judgment of dissolution incorporating the property settlement agreement dated June 12, 1986.

On appeal, the wife contends that the trial court committed reversible error by: (1) denying her emergency motion to stay the entry of the judgment of dissolution; and (2) entering the judgment of dissolution of the marriage incorporating the agreement.

## I

There is no material dispute of the essential facts. In order to place the issues in proper perspective, it is necessary to trace the evolution of the applicable legal principles.

With the repeal of the Divorce Act and enactment of the Illinois Marriage and Dissolution of Marriage Act (hereinafter IMDMA) in 1977 (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*), Illinois joined the national trend toward adoption of the Uniform Marriage and Divorce

Act (9A U.L.A. sec. 101 *et seq.* (1987)), which was designed "to reduce the adversary trappings of marital dissolution" (9A U.L.A. sec. 306, Comment, at 217 (1987)). Some of the express purposes of the IMDMA are to "promote the amicable settlement of disputes that have arisen between parties to a marriage" (Ill. Rev. Stat. 1985, ch. 40, par. 102(3)) and to "eliminate the consideration of marital misconduct in the adjudication of rights and duties incident to the legal dissolution of marriage" (Ill. Rev. Stat. 1985, ch. 40, par. 102(6)). The "Act shall be liberally construed and applied to promote its underlying purposes." Ill. Rev. Stat. 1985, ch. 40, par. 102.

In the matter before us, the parties took full advantage of the benefits of the new Act. They stipulated to waive, as permitted by the Act, the two-year period of living separate and apart to invoke the "no fault" provision. (Ill. Rev. Stat. 1985, ch. 40, par. 401(a)(2).) This modern legal approach to dissolutions of marriage reduced the acrimony that was connected with such proceedings and reduced the time devoted to such litigation in already overcrowded court calendars.

The disposition of property associated with the dissolution of a marriage is another subject of considerable controversy, emotional distress and bitter litigation. To reduce such tensions, the Act provides that marital property shall be divided "without regard to marital misconduct." Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

Even prior to the enactment of the IMDMA in 1977, property settlement agreements had been recognized in Illinois as a proper means for parties to a marital dissolution to settle their rights. (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 399 (Smith-Hurd 1980).) Such agreements were looked upon with favor (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832), and were approved by the court if found to be fair and reasonable (*Zupancic v. Zupancic* (1977), 48 Ill. App. 3d 256, 362 N.E.2d 1124). The court was not bound by the agreement of the parties and could adopt, reject or modify the agreement by the proper use of its discretion. (*Herrick v. Herrick* (1925), 319 Ill. 146, 152, 149 N.E. 820.) This traditional attitude toward property settlement agreements was radically changed with the enactment of the IMDMA.

"The terms of the agreement *** are binding upon the court unless it finds *** that the agreement is unconscionable." (Ill. Rev. Stat. 1985, ch. 40, par. 502(b).) The only exceptions are terms "providing for the support, custody and visitation of children." (Ill. Rev. Stat. 1985, ch. 40, par. 502(b).) "This is intended to encourage party autonomy, except where the rights of children are involved." (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 400 (Smith-

Hurd 1980).) Thus the role of the trial court has changed substantially. The agreement of the parties is no longer "discretionary." The new Act "undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable." 9A U.L.A. sec. 306, Comment, at 217 (1987).

"The standard of unconscionability is used in commercial law, where its meaning includes protection against one-sidedness, oppression, or unfair surprise. *** If the court finds the agreement not unconscionable, its terms respecting property division and maintenance may not be altered by the court ***." 9A U.L.A. sec. 306, Comment, at 217 (1987).

■ An agreement is not unconscionable where it has been negotiated for several months, both parties were represented by counsel, there was no allegation of fraud, and it was not sufficiently one-sided. *In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 469 N.E.2d 381.

In the case at bar, the property settlement agreement was negotiated over a period of months by the parties and their respective attorneys. There are no children, so that the exception to section 502(b), dealing with the binding effect of the agreement upon the court, is not involved. The agreement was executed and partially performed at the time of the prove up on June 12, 1986. The wife agrees that if the trial judge was not on vacation when the judgment of dissolution, transcript of June 12, 1986, and stipulation were delivered, the property settlement agreement and judgment would be proper and correct in all respects.

Therefore, the issue presented is whether the purchase of a lottery ticket by the husband on August 12, 1986, and being declared a winner of $2.1 million is such a circumstance as would render the agreement "unconscionable" and require that it be set aside.

■ It is conceded that both parties made a full and fair disclosure of their assets prior to the execution of the agreement of June 12, 1986. It is also conceded that the winning lottery ticket was not among the husband's contingent assets at that time. In granting the parties considerable freedom and autonomy in settling their property rights, section 502(b) can be reasonably construed as giving the parties the right to select a meaningful closing date. Normal business practice and normal court procedure make it inevitable that there will be a time gap from the date of execution of an agreement and the entry of a judgment of dissolution. The agreement is intended "to reduce continuing litigation between the parties." The proper standard

to review the propriety of the settlement agreement is unconscionability rather than mere unfairness. *In re Marriage of Morris* (1986), 147 Ill. App. 3d 380, 497 N.E.2d 1173, *appeal denied* (1987), 113 Ill. 2d 574.

■ The mere allegation that the husband purchased a lottery ticket and won, after the execution of the agreement and prove up, does not rise to the standard of unconscionability required to relieve the trial court of the binding effect of the agreement mandated by the IMDMA. If we set this agreement aside, we would frustrate the carefully structured public policy of the Act and inundate rather than relieve the courts of avoidable litigation. "There must be a point of no return—a moment of finality—in all litigation. This case is no exception." *In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 194, 248 N.E.2d 513.

We therefore conclude that the trial court properly denied the wife's emergency motion to stay the entry of the judgment of dissolution and properly entered such judgment of dissolution incorporating the property settlement agreement.

## II

■ The wife contends also that the property settlement agreement dated and executed on June 12, 1986, is not binding on the parties because of Supreme Court Rule 272 (87 Ill. 2d R. 272), which provides in part:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed."

The husband does not contend that the oral pronouncement of the court on June 12, 1986, constituted an oral judgment. If the wife filed a notice of appeal within 30 days of June 12, 1986, and ignored the written judgment order of September 29, 1986, this court would be without jurisdiction to consider this appeal. The purpose and function of Rule 272 is to resolve difficulties which arose in the past regarding the timeliness of an appeal where an oral pronouncement of judgment from the bench preceded the entry of a written judgment order. *West v. West* (1979), 76 Ill. 2d 226, 233, 390 N.E.2d 880.

■ Rule 272 and the IMDMA are compatible. The executed agreement of June 12, 1986, is binding on the court unless it is unconscionable. (Ill. Rev. Stat. 1985, ch. 40, par. 502(b).) On August 27, 1986, the wife urged the court not to reduce its oral pronouncement

of June 12, 1986, to writing for reasons that she maintains rendered the agreement unconscionable. The trial court considered and rejected the wife's argument and entered its written judgment on September 29, 1986. The wife followed the correct procedure by filing her notice of appeal after the entry of the written judgment on September 29, 1986.

Thus, the proper use of Rule 272 by the wife brought the appeal properly before this court. The husband does not dispute the fact that the September 29, 1986, judgment was a final and appealable order. Since the trial court directed the entry of a formal written judgment, a notice of appeal filed prior to the entry of that written judgment would have been premature and would not have effectively vested jurisdiction in the appellate court. *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 441, 490 N.E.2d 1252.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.