# Illinois Official Reports

## Appellate Court

---

### *People v. Pablo*, 2018 IL App (3d) 150892

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICO PABLO, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0892 |
| Filed | June 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CM-3031; the Hon. Daniel L. Kennedy, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Sharon Goott Nissim, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1     Defendant, Frederico Pablo, was found guilty of resisting a peace officer and sentenced to a 12-month term of conditional discharge. On appeal, he raises numerous contentions of error, including that the court erred in allowing the State to unilaterally withdraw from a stipulation on the day of trial. We vacate defendant's conviction and remand for further proceedings.

¶ 2                                               FACTS

¶ 3     The State charged defendant with the Class A misdemeanor offense of resisting a peace officer (720 ILCS 5/31-1 (West 2012)). Defendant was initially found guilty following a bench trial; however, the circuit court granted his motion for a new trial after finding that he had never executed a valid jury waiver.

¶ 4     On September 22, 2015, defendant announced he was ready for trial. The State announced it was ready but noted that one of the officers it intended to call would be unavailable the next day. The State further explained that it had a civilian witness present that day, but the prosecutor expressed that he was disinclined to seek a continuance where a civilian witness was involved. The court rejected the State's suggestion that a jury be selected and then held until the officer was available. Instead, the court suggested the parties work toward a stipulation.

¶ 5     On the morning of November 2, 2015, the court asked the parties if they had reached a stipulation. Discussion on that topic ensued throughout the morning session. That afternoon, the court read the stipulation into the record:

> "Okay. This is the stipulation of the parties. The parties hereby stipulate that if Danish H. Ali were called to testify, he would testify that his vehicle was struck by another vehicle with Illinois registration 5403474, and he gave the Bolingbrook Police Department a description of the driver of the fleeing vehicle as a male Hispanic and that he had a mustache and he arrived at 246 Caroline Street, Bolingbrook. Officer Jon [Costion] approached Frederico Pablo, was handcuffed and made the statement, 'that's him, but he shaved his mustache off[.]' [S]igned by all parties."

The court also entered a written order referencing the stipulation. The order clarified that the defense objected to the admission of Ali's statement, "that's him, but he shaved his mustache," but stipulated to the fact that he would nevertheless testify to that.

¶ 6     The State noted that a possibility remained that Ali would be available to testify in person, in which case the stipulation would be unnecessary. Defense counsel interjected, arguing that the stipulation included "testimony from Mr. Ali that we wanted in regardless of whether he is here to testify." The court responded: "Well, if he is not here, this is a stipulation signed by all parties." The court concluded: "If he is here, stipulation goes in the garbage." Defense counsel noted that, if Ali was present and the State did not call him, the defense would. The matter proceeded immediately from that point to jury selection.

¶ 7     The following morning, November 3, 2015, the State moved to bar the defense from introducing any evidence that the police officers investigating the car accident had arrested the wrong person, arguing that the lawfulness of the arrest was not relevant to a resisting charge. The court pointed out that Ali's stipulated testimony, which concerned only the car accident and Ali's identification of defendant as the driver, opened the door to allow defendant to

pursue that topic. The court stated: "[Y]ou entered into a stipulation [in which] another person identifies the defendant as the one who committed the fleeing and the eluding. That brings into issue his credibility."

¶ 8        The State responded by stating that it would withdraw the stipulation "and not talk about [Ali] at all." The court allowed the State to withdraw the stipulation, telling the State, "You got [*sic*] the perfect right to withdraw the stipulation." Defense counsel objected vociferously, taking exception to the State's waiting until the jury had been impaneled to withdraw from the stipulation. Further, counsel explained the importance of the stipulation, or Ali's personal testimony, to defendant's case:

> "[O]ur entire theory of the case[ ] is that the officers are lying about [defendant] resisting at all.
>
>       ***
>
> We are also going to argue that [defendant] was injured in the process. And the officers knew that. And after injuring an innocent man for a charge they arrested him on, they are now trying to justify their actions by *** claiming that he resisted."

The court reiterated that the State could withdraw the stipulation because "[i]t's a stipulation of their witness."

¶ 9        The court then granted the State's motion *in limine*, barring defendant from referencing in opening statements the fact that the police arrested the wrong person. The court noted that further objections could be raised during the evidentiary portion of the trial. After a discussion of jury instructions, the jury was brought into the courtroom, and the parties proceeded to opening statements.

¶ 10       The State called three Bolingbrook police officers in its case-in-chief, Steven Ficek, John Tuttle, and Jon Costion. The officers testified that they were investigating a hit and run accident, which led them to defendant's house, where they found the vehicle that had been involved in the accident. The officers called for a tow truck. As the vehicle was being hooked up to the tow truck, defendant exited the house through the garage. When Tuttle asked if the vehicle belonged to him, defendant told Tuttle that it did. Defendant then looked over his shoulder and began shuffling back toward the garage. Tuttle attempted to grab defendant's arm to prevent him from retreating into the house, but defendant jerked his hand away. Tuttle decided to arrest defendant and told him to put his hands behind his back. Defendant did not comply, and a struggle ensued. Costion observed the struggle, tackled both men, and then assisted in prying defendant's arms behind his back. Ficek assisted as well.

¶ 11       Throughout the cross-examination of the officers, the court sustained the State's objections when defense counsel attempted to elicit testimony regarding Ali or the car accident. The court also prevented defense counsel from asking the officers about injuries that defendant sustained in the altercation.

¶ 12       Defendant, his niece, his sister, and his brother testified during defendant's case-in-chief. The direct examination of each witness was riddled with sustained State's objections as well, all stemming from questions related to the car accident or the arrest of the incorrect person. The court rejected defense counsel's argument that the State had opened the door by asking the officers about their investigation and the vehicle they were looking for.

¶ 13       Defendant testified that he told the officers that the vehicle was not his but belonged to his brother. After he asked what was happening, the officers tackled him. Defendant testified that

- 3 -

he never took a step back from the police officers and never looked over his shoulder. He testified that he was tackled immediately and would not have had time to accomplish those things. Defendant testified that he never struggled or resisted by moving his body when the officers were handcuffing him. Defendant testified that he went to the hospital some time thereafter, but the court prevented defense counsel from asking any further questions on the subject.

¶ 14    The jury found defendant guilty, and the court sentenced him to a 12-month term of conditional discharge.

¶ 15                                                                    ANALYSIS

¶ 16    On appeal, defendant contends that the circuit court erred when it allowed the State to unilaterally withdraw the stipulation that the parties had agreed to the day before. We agree.

¶ 17    A stipulation is a conclusive agreement between the parties with respect to an issue before the court. *People v. Woods*, 214 Ill. 2d 455, 468 (2005). In that vein, parties may stipulate to the testimony of a witness in the event that the witness is not present at trial. *E.g.*, *People v. Durgan*, 346 Ill. App. 3d 1121, 1127-28, 1132 (2004). Courts look with favor upon stipulations because they "tend to promote disposition of cases, simplification of issues[,] and the saving of expense to litigants." *In re Estate of Moss*, 109 Ill. App. 2d 185, 192 (1969); *People v. Calvert*, 326 Ill. App. 3d 414, 419-20 (2001). "Parties who agree to certain terms are estopped from later objecting to the terms of that agreement. Generally, neither can complain of evidence stipulated into the record [citations]." *People v. Baynes*, 88 Ill. 2d 225, 239 (1981).

¶ 18    A stipulation signed by attorneys for both parties is binding. *Kazubowski v. Kazubowski*, 93 Ill. App. 2d 126, 134 (1968) (*per curiam*). "It is obvious that one of the parties to a stipulation cannot withdraw from the binding force of such stipulation unless he has the consent of the other party or leave of the court [citation]." *Id.* "The law in Illinois is well settled that: 'Parties will not be relieved from a stipulation in the absence of a clear showing that the matter stipulated is untrue, and then only when the application is seasonably made.' " *People v. Polk*, 115 Ill. App. 3d 1011, 1013 (1983) (quoting *Brink v. Industrial Comm'n*, 368 Ill. 607, 609 (1938)).

¶ 19    The policy favoring stipulations—and disfavoring the withdrawal from those stipulations—is well illustrated in *People v. Siems*, 170 Ill. App. 3d 894 (1988). In that case, the parties on appeal agreed to a stipulated statement of facts in lieu of a report of proceedings. *Id.* at 895. This included a stipulation that Kentucky was a member of the Driver License Compact.[1] *Id.*

¶ 20    In fact, Kentucky was not a member of that compact. *Id.* at 896. After defendant had filed his brief, the State moved to withdraw the agreed statement of facts. *Id.* at 895-96. Defendant objected, arguing that his brief was filed in reliance on the stipulation. *Id.* at 896. The *Siems* court denied the State's request to withdraw the stipulation on the grounds that the request was not seasonably made, noting that "the State did not seek relief until seven months after the stipulation was entered into and filed and five months after defendant filed his brief based solely upon the stipulation in question." *Id.* at 897.

---

[1]The issue in *Siems* turned on whether the defendant's Kentucky driver's license stood as a defense to an Illinois prosecution for driving while his license was revoked.

¶ 21    In the present case, the parties presented their signed stipulation to the circuit court, and the court accepted the stipulation, read it into the record, and entered a written order referencing it. When the State moved to withdraw the stipulation, it did not allege that the facts contained therein were untrue or incorrect. Nor does the State argue as much on appeal. Absent " 'a clear showing that the matter stipulated is untrue,' " the circuit court had no grounds on which it could allow the State to unilaterally withdraw the stipulation. *Polk*, 115 Ill. App. 3d at 1013 (quoting *Brink v. Industrial Comm'n*, 368 Ill. 607, 609 (1938)).

¶ 22    Furthermore, the State's request to withdraw the stipulation was not seasonably made. The request was made just moments before opening statements commenced, providing the defense with no time to react to the change in the case. Indeed, that change in the case was monumental, as much of the defense's theory of the case turned on Ali's stipulated testimony opening the door to evidence of the police arresting the wrong person. To be sure, the stipulation had been entered only a day earlier, a far cry from the seven months in *Siems*. However, the *Siems* court also considered the impact withdrawal would have on the opposing party. Here, just as in *Siems*, defendant was relying heavily on the stipulation.

¶ 23    In response, the State argues that it is not required to call any witness at trial and that from that well-settled rule it follows that it is also not required to use any stipulation at trial. While the State is plainly correct that it is not required to call a certain witness, that particular point of law has no bearing on the stipulation issue. The State's argument that "there was no requirement that the People actually use the stipulation" relies on a flawed premise. While Ali was the State's witness, the stipulation to his testimony was a binding agreement between *both* parties. See *Kazubowski*, 93 Ill. App. 2d at 134. The stipulation did not belong to the State any more than it did to defendant, and the State did not retain any greater right to withdraw the stipulation than did defendant.

¶ 24    The State also asserts that its withdrawal of the stipulation "was timely made prior to it being entered into evidence." We reject the argument that a stipulation is not binding on the parties until it is read to the jury at trial. The parties here agreed to Ali's stipulated testimony and presented a copy signed by both parties to the circuit court. The circuit court accepted the stipulation, read it into the record, and issued a written order referencing the stipulation. Clearly the steps required for the formation of a binding stipulation were satisfied. *Id.*

¶ 25    Indeed, the facts of the present case illustrate precisely why the State's argument must fail. If a stipulation was not binding until executed at trial, a party could make any number of stipulations prior to trial—thus inducing certain strategic decisions from the opponent—only to withdraw from those stipulations on the eve of trial. Here, the State stipulated to Ali's testimony. From defendant's perspective, this stipulated testimony regarding the car accident and Ali's identification of the driver would open the door to those issues, allowing defendant to elicit further testimony from the other witnesses in the case. When the State was allowed to withdraw the stipulation at the eleventh hour in order to prevail on a motion to bar references to those issues, it undermined the defense's entire theory of the case, with mere moments before opening statements were to begin.

¶ 26    Finally, the State argues that the defense could have subpoenaed Ali and called him as a witness and that, "having failed to do so, defendant cannot now claim prejudice." However, the prejudice suffered by defendant in this case is clear. Initially, the very fact that a stipulation regarding Ali's testimony was agreed to obviated any need for the defense to subpoena Ali. The existence of the stipulation should have guaranteed that Ali's testimony would be

presented, one way or another. Having reached that agreement, there was no reason for the defense to subpoena Ali.

¶ 27    Moreover, the trial record demonstrates the impact that the court's erroneous decision to allow the State to withdraw from the stipulation had on defendant's case. As referenced above, much of defendant's theory of the case turned on eliciting testimony regarding the officers' arrest of the wrong person for fleeing the scene of the car accident. Ali's stipulated testimony guaranteed that that door would be open to defendant.[2] As a result of the late withdrawal of the stipulation, the defense was essentially left without a theory of the case, as it was not allowed to attack the officers' credibility. See *supra* ¶ 8. Defense counsel's cross-examinations and direct examinations were thus replete with constant sustained objections, and the trial had to be paused numerous times so the parties could argue on those objections. To say that the court's decision to allow the State to withdraw the stipulation just before trial did not impact defendant's case is patently incorrect.

¶ 28    In sum, the parties agreed to a binding and conclusive stipulation. When the State later wished to withdraw the stipulation, defendant did not consent. Nor did the State make a showing that the stipulation was untrue. Further, the request for withdrawal was not seasonably made, as it occurred just moments before defendant's trial was to begin. Accordingly, it was error for the circuit court to allow the State to withdraw the stipulation (see *Polk*, 115 Ill. App. 3d at 1013; *Kazubowski*, 93 Ill. App. 2d at 134), and the State cannot show that the withdrawal was harmless. We therefore vacate defendant's conviction for resisting a peace officer, order the reinstitution of the parties' previously agreed-upon stipulation, and remand for further proceedings. Because we find the stipulation issue dispositive, we need not address the remainder of defendant's arguments.

¶ 29                                      CONCLUSION

¶ 30    The judgment of the circuit court of Will County is vacated, and the matter is remanded for further proceedings.

¶ 31    Vacated and remanded.

¶ 32    JUSTICE WRIGHT, dissenting:

¶ 33    The issue, in my mind, is whether the trial court abused its discretion by allowing a party to remove a witness from a pretrial witness list before the jury selection process began. In this case, I conclude the trial court's ruling was entirely justified and correct as discussed below.

¶ 34    For purposes of clarification, I respectfully disagree that the agreed language that the court read into the record constitutes a binding "stipulation" in the first place. The document at issue does not admit facts necessary to prove the cause of action or agree to waive certain foundational requirements for documentary evidence to be submitted to the court. Instead, the document at issue in this appeal represents an agreed statement pertaining to a *potential* witness's testimony. For purposes of this dissent, for the most part, I will refer to the document

---

[2]The State on appeal effectively concedes that it was a tactical error for the State to enter into the stipulation in the first place, noting that "the People withdrew the stipulation due to the misapprehension of the effect on its case." Of course, saving a party from its own blunder is not a legal grounds for allowing the unilateral withdrawal of a stipulation.

at issue as "Ali's agreed testimony." At this juncture, a discussion of some additional procedural events may be helpful. After a jury trial in 2014, a new trial became necessary for reasons that are not relevant to this appeal. Interestingly, the State did present the testimony of the lay witness during the 2014 trial. However, during the 2014 trial, Ali told the jury he identified the vehicle involved in the collision by the paint on the bumper of that vehicle. There was no discussion of the facial appearance of the driver of that car during the 2014 trial.

¶ 35    As the court attempted to schedule a date for the second jury trial, the court encountered many scheduling difficulties. At various times the witnesses were present on the day scheduled for the second jury trial, and the trial was continued to another date. For example, after many continuances and delays, the court scheduled the second jury trial to begin on September 22, 2015. On that date, the State had four witnesses, a lay witness and three police officers, present and ready for trial. In fact, both the prosecutor and defense counsel announced they were ready to proceed with the jury trial on September 22, 2015.

¶ 36    When the State learned that the testimony would not begin until the next day, the State advised the court that one of the officers present on September 22, 2015, would not be available to testify the next day due to bereavement leave. The court discussed several alternatives with the parties. The court asked, "Is there any way you can stipulate to the *officer's* testimony?" (Emphasis added.) In spite of the court's suggestion, defense counsel advised the court that the defense was not prepared to stipulate to the content of the officer's testimony. However, the parties agreed to continue the jury trial to November 2, 2015.

¶ 37    When the parties reassembled on November 2, 2015, the unavailability of the police officer was no longer an issue. As the first order of business on November 2, 2015, the prosecutor advised the trial court that defense counsel wished to argue a verbal motion *in limine* before proceeding further. On that date, the State also requested a ruling on the State's verbal motion *in limine*. Before addressing the defense motion, the court asked, "Do we have a stipulation?" Without responding to the court's question, the prosecutor stated that defense counsel would like to argue the motion *in limine* "first."

¶ 38    The court asked, "What's the motion *in limine*?" Defense counsel responded, "Judge, the motion *in limine* is to exclude part of the stipulation as being irrelevant." The defense motion requested a ruling preventing the State from introducing any evidence concerning Ali's statement "that's him, but he shaved his mustache." The court denied the defense's verbal motion *in limine* and then addressed both sides by stating, "Forget about the stipulation." The court explained this statement as follows: "[Y]ou are not going to read the stipulation because he wants this and you want to bar it."

¶ 39    Based purely on my own speculation based on prior experiences on the bench, it appears to me that the prosecution's lay witness may have been present on November 2, 2015, but would have been inconvenienced by returning to court the following day when testimony would begin. It also appears to me that for some reason that is not apparent of record, both sides attempted to reach an agreement pertaining to the content of the lay witness's testimony for purposes of the second trial. Before adjourning for lunch on November 2, 2015, the court asked, "What about the stipulation?" Defense counsel said, "I think we can come up with a stipulation." The court cautioned, if you do not have a stipulation, you may not have a trial. For purposes of this dissent, I have presumed the trial court was referring to a "stipulation" pertaining to the content of the lay witness's testimony, rather than an officer's testimony.

¶ 40    After the lunch break on November 2, 2015, the parties continued their debate over the relevance of Ali's agreed testimony pertaining to a shaved mustache. Following the spirited debate, the court seemingly reversed its previous ruling denying defense counsel's motion *in limine*. At this point in time, the court reserved ruling on defendant's motion *in limine*, seeking to exclude Ali's testimony about a shaved mustache, based on relevance. The court indicated the matter would be addressed by the court when the issue came up during the jury trial. Again, I believe the court's ruling mandated that Ali would have to testify before the court decided whether portions of Ali's testimony were irrelevant and inadmissible.

¶ 41    Thereafter, the court received each side's list of witnesses. The court also requested the "stipulation" that was finalized during the lunch recess. The court read the stipulation concerning Ali's agreed testimony into the record before jury selection began. Thereafter, defense counsel presented an order for the court's signature. This order documented the court's prior ruling *in limine* and defendant's continuing objection to Ali's agreed testimony about the shaved mustache. Importantly, the order presumably prepared by defense counsel stated, "The defense will stipulate that *if* called to testify witness Danish [*sic*] Ali" would testify about a shaved mustache and this testimony would be over the defense's continuing objection. Thus, it appears to me that the parties were addressing a contingency that might arise if the State introduced the document containing Ali's agreed testimony, in lieu of requiring Ali to reappear the next day to testify in person.

¶ 42    At this point, the prosecutor stated for the record that the State *might* call Ali to testify in person. In response, the court observed, then the stipulation "goes in the garbage." Similarly, defense counsel replied that if Ali was in the courthouse on the next day, defense counsel would call Ali as a defense witness, even if the State did not. Following this discussion, jury selection began.

¶ 43    After the selection of a jury, the parties once again revisited the trial court's ruling on the defense's pretrial motion *in limine* and the State's motion to exclude any reference to defendant's false arrest. The court observed in the event that the State introduced Ali's agreed testimony as part of the State's case-in-chief, the court would allow the defense to introduce testimony pertaining to the false arrest based on Ali's mistaken identification. The court observed that Ali's agreed testimony, if offered, opened the door to this line of evidence from the defendant. Based on the court's preliminary pretrial observations, the prosecutor announced the State would not be offering either Ali's agreed testimony or Ali's live testimony.

¶ 44    The shift in the prosecution's strategy took place before jury selection took place and before the jury trial officially began. Over defense counsel's objection, the court allowed the State to control its own trial strategy by removing Ali's name from the State's witness list before the parties engaged in the process of selecting a fair-minded jury. I submit that the trial court's ruling was entirely correct because both sides were very much aware of the contingency that Ali's agreed testimony might not be used during the jury trial at all.

¶ 45    For example, the order signed by the court on November 2, 2015, contains language suggesting that "if" the State offers the testimony of Ali, then the defense will stipulate to the content of Ali's testimony. This language indicates to me that on November 2, 2015, the defendant knew the State might not offer any testimony from Ali. In addition, the court advised the parties that *if* Ali testified in person, the stipulation was "garbage." Finally, defendant addressed the contingency that, even if Ali returned to the courthouse for the evidentiary

portion of the trial, the State might not call Ali to testify. In this event, the defense indicated Ali could become a defense witness. Based on these circumstances, I do not believe the trial court erred by refusing to require the State to produce Ali as a live witness or tender Ali's agreed testimony as part of the State's case-in-chief.

¶ 46    After the trial court's ruling, defense counsel did not request the court to continue Ali's subpoena so that Ali would be present to testify for the defense sometime after November 2, 2015. The court may have granted such a request. Perhaps, in spite of many false starts, if defendant requested a continuance the court would have postponed the testimonial portion of the trial. The defense did nothing after learning that the State's case-in-chief would not include any testimony, agreed or otherwise, from the lay witness, Ali.

¶ 47    Contrary to defendant's position on appeal, I would hold that either party may be allowed to strike a witness from the list of witnesses before or after a trial begins. In other words, I conclude that neither party can be compelled by the trial court to present each and every witness disclosed to the other party during pretrial proceedings. For this reason, I respectfully dissent. I believe the trial court made the correct decision in this case.